# Inglis *v.* Webb.

### *Statutory Action of Ejectment.*

1. *Tenants in common; when co-tenancy established by inheritance.*— When two of three tenants in common die intestate, the heir of the decedents inherits from them an undivided interest in their undivided interest in the land; and by this inheritance such heir becomes a tenant in common with the other co-tenant, and all the legal incidents of that relation attach to him.

2. *Same; possession by one tennant in common is the possession of all the co-tenants.*—Where a tenant in common goes into actual possession

[Inglis v. Webb.]

of the land owned in common, the presumption of law is that he went into possession and holds possession for the benefit of his co-tenants; and while so holding possession, he can not, without the knowledge or consent of his co-tenants, by purchase or otherwise, acquire an outstanding title and thus defeat their title.

3. *Adverse possession; rights of tenants in common; ejectment; burden of proof.*—In an action of ejectment, where the evidence tends to show that defendant's ancestor had given to his three sisters the lands in controversy in exchange for their interests in other lands, and on the death of two of them, such ancestor had taken and retained possession of the lands so given, a charge asserts a correct proposition, and is properly given, which instructs the jury that if the defendant's ancestor went into possession and control of the land for his sister, recognizing her title, then her possession continued, unless she had knowledge that he claimed adversely to her and for himself; and that the burden of proving such knowledge was on the defendant claiming title through such adverse possession.

4. *Same; same; same.*—In an action of ejectment, where the defendant, who is shown to be a tenant in common with the plaintiff, claims title by adverse possession under a deed from a third person, conveying the legal title, but it appears that the plaintiff, as defendant's co-tenant, had no notice of such deed or of any change in the character of possession by the defendant, after its execution, or that the defendant was claiming to hold adversely, a charge which instructs the jury that the acquisition of the legal title by the defendant as grantee under the deed, barred the right of recovery by plaintiff in the land as co-tenant, is erroneous and properly refused.

4. *Evidence; declarations as to character of title inadmissible.*—The declarations of a third person are inadmissible to prove the source of title to land.

APPEAL from the Circuit Court of Jackson.
Tried before the Hon. J. A. BILBRO.

This was a statutory action of ejectment, brought by the appellee against the appellant. The facts of the case are set forth at length in the opinion.

Sam Inglis, a witness for the defendant, having testified that his father, Elijah Inglis, had been in possession and control of the lands for as long as he could remember, 20 or 25 years, was asked: "Did you ever hear your father explain about the title to the land—how it came and passed through the family?" The plaintiff objected to this question, which objection the court sustained, and the defendant duly excepted.

Upon the introduction of all the evidence, the court at the request of the plaintiff, gave to the jury the fol-

lowing written charges : (1.) "Lige Inglis, under the
law, when his two sisters died intestate, acquired an in-
terest as tenant in common in the land, if the land had
been exchanged with the sisters for their interest in
their father's lands, and if he took control of the land
as a tenant in common with his sister Ann, then his
(Lige Inglis') possession was the possession of Ann In-
glis ; one tenant in common can not claim adversely to
another until he first brings it to the knowledge of his
co-tenant that he is claiming it adversely to such ten-
ant." (2.) "If Inglis once went into the possession and
control of the land for his sister, recognizing her title,
then his possession continued to be her possession; un-
less he brought the knowledge home to her by word or
act, that he no longer claimed the possession for her ;
but claimed it adversely to her and for himself, and the
burden is on the defendant to show this notice to her of
his adverse claim." (3.) "If Lige Inglis purchased the
Harris land and placed his sisters in possession before
the war in consideration for the interest which they had
as heirs at law in the lands of their deceased father,
Sam Inglis, and they each (his sisters and Inglis) went
into the adverse possession of the lands they respectively
acquired, and the possession of the sisters, or the sur-
vivor of them retained the possession for ten years,
claiming the same under said trade or exchange, then
this vested the title in the sisters, subject to the laws of
descent, as his sisters successively died, but in comput-
ing the ten years the time during the war must be de-
ducted." The defendant excepted to the giving of each
of these charges ; and also separately excepted to the
court's refusal to give each of the following charges re-
quested by him : (1.) "If the jury believe the evidence,
they will find the issues in favor of the defendant." (2.)
"If the jury believe from the evidence that the parties
all claimed title through Dr. G. M. Harris, and held as
purchasers recognizing his legal title until the deed was
made, then there was no adverse possession against him,
and the legal title passed under the deed to E. R. Inglis.
In that event, plaintiff can not recover." (3.) "The
court charges the jury that if it be true that the lands
were sold or exchanged to his three sisters, then upon
the death of the first, her interest passed in part to E.
R. Inglis acquired a deed, the legal title passed to him,

and plaintiff can not recover." (4.) "Adverse possession is an open possession under claim of title, against all the words. And if Aunt Ann held in common with E. R. Inglis after the death of her sisters, she could have no adverse title against said E. R. Inglis, unless she openly asserted it against him, and the same was brought home to him." (5.) "The statute of limitations did not run in this State from the 11th day of January, 1861, to the 21st day of September, 1865. Deducting this space of time, title by adverse possession could not become perfect from the 1st day of January, 1858, to the date of the deed from G. M. Harris and wife to E. R. Inglis. The court, therefore, charges that title by adverse possession under the evidence was not complete at the date of the execution of said deed. The legal title passed to E. R. Inglis, and the plaintiff can not recover."

There were verdict and judgment for the plaintiff. The defendant appeals, and assigns as error the several rulings of the trial court to which exceptions were reserved.

MARTIN, BOULDIN & ASHLEY, for appellants.—1. If Elijah Inglis, in the first instance, purchased the lands for his sister under executory contract in exchange for their interest in the home place, and they went into possession under such. purchase, the statute of limitations did not run in their favor against Dr. Harris, the original vendor.—*Sample v. Reeder*, 107 Ala. 227 ; *Hancock v. Kelly*, 81 Ala. 368 ; *Morgan v. Casey*, 73 Ala. 222 ; *Beard v. Ryan*, 78 Ala. 37.

2. Neither did the statute of limitations under any view of the evidence, run against Elijah R. Inglis after he acquired the title.—*Allen v. Hamilton*, 109 Ala. 634 ; *Gafford v. Strauss*, 89 Ala. 283 ; *Harper v. Rudd, Ib.* 371 ; *Duncan v. Williams, Ib.* 341 ; *Scruggs v. Decatur Min. & Land Co.*, 86 Ala. 173 ; *Traun v. Keiffer*, 31 Ala. 136 ; *Bragg v. Massie,* 38 Ala. 89 ; *Pickett v. Pope*, 74 Ala. 122 ; *Michan v. Wyatt*, 21 Ala. 813 ; *McCoy v. Odom*, 20 Ala. 502 ; *Governor v. Campbell*, 17 Ala. 566 ; *Farmer v. Eslava*, 11 Ala. 1028.

3. The alleged admissions of Elijah Inglis after he acquired a deed and while he was in possession and control of the lands, to the effect that his sister Ann owned

or had an interest therein, could be nothing more than a recognition of a resulting or constructive trust in favor of his co-tenant, Ann. They were tenants in common therein after the death of the other sisters, intestate, and without issue.—3 Brick. Dig. 785, § 47; *Johns v. Johns*, 93 Ala. 239; Freeman on Co-tenancy and Partnership, 156; *Lawrence v. Webster*, 44 Cal. 385; Pow. Eq. Jur. 155, 1030, 1044, 1045, 1053.

J. E. BROWN, *contra*.—The court properly refused to allow the question to be asked Sam Inglis as to the declaration of his father, in reference to the source of title to the lands.—*Baucum v. George*, 65 Ala. 259; *Spivey v. State*, 26 Ala. 103; *Allen v. State*, 73 Ala. 23; *Cooper v. State*, 63 Ala. 81; 1 Brick. Dig., 843, §§ 558, 559, 560.

The charges given at the request of the plaintiff were correct.—*Johns v. Johns*, 93 Ala. 239; *Sibley v. Alba*, 95 Ala. 191; *Baucum v. George*, 65 Ala. 260; *Woodstock Iron Co. v. Roberts*, 87 Ala. 437; *Burrus v. Meadors*, 90 Ala. 140; *Williams v. Avery*, 38 Ala. 115.

HEAD, J.—Statutory real action by appellee against appellant.

The plaintiff's evidence tended to show that sometime, from 1858 to 1860, Elijah Inglis, Jr., by parol, exchanged the land in suit, for the interests of his three sisters, Letitia, Ann and Jane Inglis, in certain other lands inherited from their father; or purchased the lands in suit, for his sisters, from G. M. Harris, in exchange for their interests in said inherited lands; that the sisters went into possession, claiming title under such purchase or exchange, and occupied them, as their place of residence, until Letitia died about the beginning of, or during, the civil war. No written evidence of the exchange was introduced or shown to have existed. Jane died sometime during the war; that about, or just after the close of the war, Ann, the only remaining sister, removed from the lands and thereafter resided in a little house built for her by said Elijah Inglis, in his yard, until her death in 1895; that said Elijah also died in 1895, after the death of Ann; that after Ann's removal from the place, said Elijah controlled the lands, rented them and collected the rents, but set up no claim of title; that he admitted, at various times, that the

lands belonged to her, and that he had given them to the three sisters in exchange for their interests in the inherited lands.

The defendant's evidence did not tend to contradict any of the tendencies of plaintiff's evidence of facts occurring prior to the removal of Ann from the place. It tended to show that after that event, said Elijah had control of the lands, rented them in his own name, collected the rents and used them, and claimed the lands as his own; that said Ann, about the year 1868, made an agreement with him that if he would care and provide for her during her life, he might have the lands; that she had paid $250 thereon, out of the proceeds of her interest in the inherited lands, and if he would pay the balance to Harris and care for her during her life, he could take the land; that she only wanted a support during her life: that a few years before her death she divided her personal effects among the children of said Elijah, and stated at the time that she had turned the land over to him; that she had nothing left.

The evidence further tended to show, that the said Ann had some live stock which she sold from time to time; that she had no separate crib but fed it from said Inglis'; that she was but little expense to any one else until the last few years of her life, when she was paralyzed and helpless, and needed much attention.

The defendant also introduced in evidence a deed, in due form, executed by G. M. Harris and wife to said Elijah R. Inglis, on may 14, 1871, upon a recited consideration of $1,000, in hand paid, purporting to convey to the grantee a fee simple title to the lands in suit, with covenants of warranty and for quiet and peaceable possession.

There was no evidence that said Ann or plaintiff had any notice of the execution of the deed, or that there was any change, in any respect, in said Elijah's occupation, management or use of the land after its execution.

The plaintiff, Letitia Webb, and said Elijah were the sole heirs of Ann. The defendant is a son of said Elijah. Plaintiff claimed and recovered, as an heir of said Ann, a half interest in the land. The defendant claimed that his father was sole owner.

The bill of exceptions recites that it was admitted on

the trial that both the plaintiff and defendant claim title through G. M. Harris.

As to how or by whom the lands in controversy were obtained from Harris, the record, as the foregoing statement of the case shows, is indefinite. In one phase of the evidence, Elijah Inglis purchased from Harris and then exchanged with his three sisters for their interest in the inherited lands. The evidence does not show what the terms of his purchase were—whether he paid the purchase money or bought on credit. From another phase of the evidence it may be inferred that the sisters were the purchasers directly from Harris, and, at least, as late as the year 1868, had not paid all the purchase money. The record is silent as to whether the purchase money was paid after that time or not. There is no evidence of any express recognition by Ann Inglis, after 1868, that there was any purchase money owing Harris. This action was brought December 9, 1895—more than twenty years after the last recognition of unpaid purchase money.

When Letitia Inglis died said Elijah inherited from her an undivided interest in her undivided interest in the land, charged with whatever obligations rested on it for purchase money. The same when Jane died. By these inheritances he became a tenant in common with Ann of these lands, and all the legal incidents of that relation attached to him. After the death of Jane, Ann moved off the premises and lived on the premises of Elijah. Elijah went into possession of these lands, receiving the rents, etc. The presumption of law, which must prevail unless rebutted by proof, is that he went in as tenant in common with Ann and held for her as well as for himself. Unrebutted, the presumption will prevail that his subsequent possession was the possession of Ann and himself to the same extent and effect as if both jointly actually occupied and enjoyed the land; so that, in that case, the result under the facts disclosed by the record, was that Elijah, owning undivided interests charged with purchase money owing Harris, and Ann owing an undivided interest charged with purchase money owing Harris, went into joint possession of the lands and thereafter held as owners, for more than twenty years after any recognition by Ann of any right or interest of Harris in the land, or claim thereon for

purchase money. They occupied in effect the position of two mortgagors—tenants in common of the mortgaged land—remaining in possession more than twenty years after law-day, with no express recognition by one of them of the continuance of the security. In such case as to the party who had not recognized the continuance of the security the debt is presumed to have been paid, and his title is perfect by prescription.—*Relfe v. Relfe*, 34 Ala. 500; *Shorter v. Frazer*, 64 Ala. 74; *Chapman v. Lee*, *Ib.* 483; *Tayloe v. Dugger*, 66 Ala. 444; *Hancock v. Kelly*, 81 Ala. 368; *Moses Bros. v. Johnson*, 88 Ala. 517.

The deed which Harris executed to Elijah Inglis in 1871, so far as there was any evidence to show, was without the knowledge of Ann Inglis. If, as we have said was the legal presumption, to be applied unless rebutted, (and the verdict is to the effect that it was not rebutted) the possession of Elijah was the possession of both Ann and himself, he had no right to purchase and acquire an outstanding title and thus defeat her title. If he paid the purchase money due Harris and took a conveyance to himself, it was no more than the removal of an incumbrance upon the common property which inured to Ann to the extent of her interest in the lands. For collection of authorities see 11 Am. & Eng. Encyc. of Law, 1082; *Ib.* 1078, *et seq.*

In any phase of the evidence that deed is of no effect in this case. Ann's possession of the land, at that time, by and through her co-tenant, Elijah, could not be affected, nor its nature or legal effect changed, by any act of her co-tenant done without her knowledge or consent; and although the legal title to the land might still have been in Harris at the time the deed was executed, her possession was running and did run to the period of prescription, being maintained for her, as her co-tenant, by the very person to whom, without her knowledge or consent the conveyance was made. If it be true, as a principle of law, that the execution of the deed conveyed the legal title to Elijah, rendering a resort to a court of equity by Ann necessary to secure the title to the extent of her interest in the lands, yet the continued possession of Ann for more than twenty years after execution of the deed gave her the legal title, as effectually as if it had been decreed to her by a court of equity.

The several charges given at the request of the plain-

[S. & N. Ala. R. R. Co. v. Highland Ave. & Belt R. R. Co.]

tiff were free from error, and those requested by the defendant were properly refused.

The question put to Sam Inglis called for declarations of his father as to the sources of title, and was properly refused—a principle so often decided by this court that a citation of authorities is unnecessary.

There was evidence tending to rebut the presumption that Elijah Englis went into possession as a tenant in common with Ann, and that he virtually purchased the land from Ann, but the jury found against that version.

Affirmed.