(102 So. 611)

## WILLIAMS v. MASSIE et al.   (6 Div. 84.)

(Supreme Court of Alabama.   Oct. 30, 1924.
Rehearing Denied Jan. 22, 1925.)

**1. Homestead 136—Rights of widow and minor children in land of deceased husband and father not affected by his testamentary disposition.**

Homestead rights of widow and minor children in land of deceased husband and father may not be affected by his testamentary disposition.

**2. Homestead 136—Title to homestead in land of deceased mother vests in her minor children, regardless of her will.**

Under Code 1896, § 2077, title to homestead in land of deceased mother vests in her minor children regardless of her attempt to devise it to husband, not being affected by Const. 1901, § 209, securing rights of married women in land as against their husbands.

**3. Homestead 143—Exemptions allowed to minor children from estate of deceased mother limit share of husband in deceased wife's land.**

Claim of husband to life estate in deceased wife's realty *held* inferior to homestead rights of her children, in view of Code 1896, § 2077, relating to exemptions to minor child or children allowed from estate of deceased mother, which limits section 2534 giving husband of such deceased wife half her personalty and use of land during life.

**4. Tenancy in common 19(4)—Purchase at foreclosure sale by tenant in common inures to benefit of all cotenants.**

Where father by inheritance from son became tenant in common with surviving children of wife, his purchase of land in question at foreclosure sale inured to benefit of all tenants in common, and did not start period from which to compute laches.

**5. Tenancy in common 15(1)—Deed by tenant in common to wife without change of possession, held not to start period of limitation.**

Where father, tenant in common with children of land which descended from his first wife, remained in possession with such children, deed thereof to second wife, unaccompanied by change in possession, did not start period of limitation against children.

**6. Tenancy in common 15(7, 8)—Tenant in common held not to have given notice of claim adverse to cotenants by probating will making him general legatee and devisee.**

Father, tenant in common with children of land descending from their mother, by probating her will making him general devisee and legatee, did not give notice of claim adverse to cotenants, because for one reason, at least, of absence of description of property in question therefrom.

### On Rehearing.

**7. Tenancy in common 19(5)—To avail self of benefits of purchase of property by tenant in common, cotenant must offer to contribute within reasonable time.**

Right of tenant in common to participate in purchase of common property by cotenant depends upon contributing, or offer to contribute, to expense thereof within reasonable time.

**8. Tenancy in common 19(5)—"Laches" in offering to contribute to expense of purchase of common property by cotenant held not imputed to other cotenants not informed of adverse claim.**

Where father, tenant in common with minor children of land descending from their mother, purchased it at foreclosure sale, and later conveyed it to second wife without change of possession, his children, cotenants, not knowing of adverse claim until shortly before suing, in failing to contribute or offering to contribute to expense of purchase at foreclosure sale, were not guilty of "laches," which is an implied waiver arising from knowledge of existing conditions and acquiescence in them.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Laches.]

Appeal from Circuit Court, Jefferson County; William M. Walker, Judge.

Bill in equity by Virginia M. Massie against Myrtie S. Williams and others, to sell lands for distribution of the proceeds among joint owners.  From a decree granting relief, respondent Myrtie S. Williams alone appeals.  Affirmed.

Harsh, Harsh & Harsh, of Birmingham, for appellant.

The sale of the land at foreclosure, and purchase by M. M. Williams from the purchaser at such sale, prevented the children of Harriet Williams from being entitled to homestead rights therein.  Savage v. Bradley, 149 Ala. 169, 43 So. 20, 123 Am. St. Rep. 30.  The will of Harriet Williams vested the legal title in her husband, and left nothing from which a homestead could be set apart to the minor children.  Dickey v. Vann, 81 Ala. 429, 8 So. 195; Code 1896, §§ 2033, 2069; Const. 1901, § 209; 1 Words and

---

For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Phrases, 197. The will of a married woman bequeathing her estate is effective as against the claims of homestead rights of her children. Royal Exch. Assur. v. Almon, 206 Ala. 48, 89 So. 76; Const. 1901, § 208. Complainant's claim and that of cross-complainant are barred by the statute of limitations. Kelly v. Shropshire, 199 Ala. 602, 75 So. 292; Gayle v. Pennington, 185 Ala. 65, 64 So. 572; Lady Ensley Co. v. Gordon, 155 Ala. 528, 46 So. 983; Harrison v. Midland Ry., 144 Ala. 246, 40 So. 394, 6 Ann. Cas. 804. These claims are stale. Gayle v. Pennington, supra; Peters M. L. Co. v. Hooper, 208 Ala. 330, 94 So. 606; Henley v. Masonic Temple, 208 Ala. 372, 94 So. 300. The rule that the purchase at foreclosure by one co-tenant inures to the benefit of all does not apply to purchasers at forced sale. Savage v. Bradley, 149 Ala. 172, 43 So. 20, 123 Am. St. Rep. 30. The complainant was guilty of laches. 38 Cyc. 40.

Smyer & Smyer, of Birmingham, for appellees.

The title to the real estate vested in the children of Harriett Williams, notwithstanding her attempted devise to her husband. Code 1896, §§ 2069, 2077; Munchus v. Harris, 69 Ala. 506; Bell v. Bell, 84 Ala. 64, 4 So. 189; Richter v. Richter, 180 Ala. 224, 60 So. 880; Hartsfield v. Harvoley, 71 Ala. 231; McDonald v. Berry, 90 Ala. 464, 7 So. 838; Edmonds v. Cogsdill, 182 Ala. 309, 62 So. 691; Chamboredon v. Fayet, 176 Ala. 217, 57 So. 845; Quinn v. Campbell, 126 Ala. 280, 28 So. 676; Hubbard v. Russell, 73 Ala. 578. The purchase at or redemption from foreclosure sale by M. M. Williams inured to the other co-tenants. Before adverse possession can begin to run in favor of one cotenant, there must be an actual ouster or its equivalent. Inglis v. Webb, 117 Ala. 387, 23 So. 125; 11 A. & E. Ency. Law, 1078, 1082; Sumner v. Hill, 157 Ala. 230, 47 So. 565; Ashford v. Ashford, 136 Ala. 637, 34 So. 10, 96 Am. St. Rep. 82; Alexander Co. v. C. of G., 182 Ala. 516, 62 So. 745; Kidd v. Borum, 181 Ala. 161, 61 So. 100, Ann. Cas. 1915C, 1226. There was such confidential relation between M. M. Williams and appellees that the law will raise a constructive trust in their favor. Insurance Co. v. Dangaix, 103 Ala. 388, 15 So. 956; Waller v. Jones, 107 Ala. 331, 18 So. 277; 25 C. J. 1250; 23 C. J. 1170; Parker v. Parker, 75 Okl. 234, 182 P. 697, 11 A. L. R. 720; Ryason v. Dunten, 164 Ind. 85, 73 N. E. 74; Culmore v. Medlenka (Tex. Civ. App.) 44 S. W. 676; 39 Cyc. 169; Lagarde v. Anniston L. & S. Co., 126 Ala. 496, 28 So. 199. In the case of fraud or constructive fraud, laches does not begin to run until discovery. Baker v. Whiting, Fed. Cas. No. 787; Manning v. Hayden, Fed. Cas. No. 9403; Bank of U. S. v. Beverly, 1 How. 134, 11 L. Ed. 75; Michoud v. Girod, 4 How. 503, 11 L. Ed. 1076; Piatt v. Oliver, 2 McLean, 267, Fed. Cas. No. 11115; Boone v. Chiles, 10 Pet. 177, 9 L. Ed. 388; Oliver v. Piatt, 3 How. 333, 11 L. Ed. 622; Waller v. Jones, 107 Ala. 331, 18 So. 277; Butts v. Cooper, 152 Ala. 376, 44 So. 616.

SAYRE, J. Harriet V. Williams died seized and possessed of a certain parcel of land. At the time she had acquired title, the land, a lot in the city of Birmingham, was under mortgage. Afterwards Mrs. Williams and her husband executed a mortgage by means of which she raised funds to discharge the original mortgage. She died May 10, 1901. M. M. Williams, surviving husband, was on his petition, appointed administrator of her estate, and, at the end of proceedings had in the probate court, her estate was declared insolvent, and June 25, 1901, the lot in controversy was set apart as a homestead to her two surviving minor children, James N. and Harry P. Williams, subject to the outstanding mortgage. The record reads "Harriet P. Williams," but this was evidently intended for "Harry P. Williams," and no point appears to have been made against the proceeding on account of this misnomer. In November, 1901, James N. Williams died, and in February, 1904, the then outstanding mortgage was foreclosed under a power of sale. At the foreclosure M. M. Williams became the purchaser, and afterwards, in 1912, conveyed the property to his second wife, the appellant in this cause, Myrtie S. Williams. In the meantime, January, 1910, M. M. Williams produced and procured the probate of the last will and testament of his first wife whereby she devised to him all her property. He explains his delay in probating the will and his part in the administration of the estate of his deceased wife by saying that at that time the will had been mislaid and could not be found. The bill was filed by Virginia M. Massie, an adult daughter of Harriet V. Williams at the time of her death, and sought a sale of the lot in controversy and a division of the proceeds in lieu of partition. Myrtie and M. M. Williams, Harry P. Williams, the children of E. H. Williams, deceased, who was an adult brother of complainant at the death of their mother, and one Davis, an incumbrancer whose claim is not denied, and to whom no further reference need be made, are parties defendant. Appellant claims title through the will of Harriet V. Williams and the deed made to her by M. M. Williams. Appellee Harry P. Williams claims title through the probate proceeding setting apart the lot to him and his brother, James S. Complainant and the defendants other than appellant claim, also, by inheritance, the title of James S. Williams. Appellant was awarded the one-fourth interest which M. M. Williams inherited from James S. and which passed by his deed to her. Defendants set

up their interests by cross-bills. Appellant undertakes to establish her ownership of the entire property by and through three propositions which shall be considered in turn.

(1) As a muniment of title the will of Harriet V. Williams is superior and paramount to the proceeding by which homestead was set apart to her minor children. This cannot be sustained.

[1, 2] It is the well-settled law of this state that the homestead rights of widow and minor children in the realty of a deceased husband and father may not be affected by the testamentary disposition of the owner. Edmonds v. Cogsdill, 182 Ala: 309, 62 So. 691; Richter v. Richter, 180 Ala. 218, 60 So. 880; and cases there cited. But here the children to whom homestead was set apart trace their title to their deceased mother, whom the father survived, and the argument is that their rights are different—that they were not entitled to homstead exemptions in the property of their mother as against the right of the mother to devise her property. Such may have been the law at one time, but, if so, section 2077 of the Code of 1896, in effect at the time of the matters and things now in dispute, supplied a well-deserved remedy. The section reads:

"2077. *Exemptions to Minor Child or Children Allowed from Estate of Deceased Mother.* When any woman, a resident of this state, dies, leaving surviving her a minor child or children, there shall be exempt from administration and the payment of debts, in favor of such minor child or children, such property of her estate, real and personal, as is exempt by law to the widow and minor child or children, or either, from the estate of a deceased husband or father, and such exempt property shall be set apart and appraised, and held by such minor child or children, in all respects as provided in this chapter with respect to exemptions from the estate of a deceased father, so far as such provisions are applicable."

And this court in Quinn v. Campbell, 126 Ala. 280, 28 So. 676, interpreting the section at its face value, held it to be apparent from a casual reading of the section that there was in it nothing to support the contention that a minor child whose mother dies leaving a husband is not within its provisions, and that only those children whose mothers are widows at the time of her death are included within the benefits conferred. Section 209 of the Constitution provides that the estate and property of every female shall not be liable for the debts, obligations or engagements of her husband, "and may be devised or bequeathed by her, the same as if she were a feme sole"; but this section of the Constitution and its prototype in the Constitution of 1875, notwithstanding labored arguments to the contrary, appear to us to intend to secure the rights of married women as against their husbands, and have no relation whatever to the case under consideration. Appel-

lant also hangs a hope on the concluding clause of section 2077 of the Code of 1896, which undertakes to confer upon exemptions allowed to minor children out of the estate of a deceased mother a status of right and title the same "in all respects as provided in this chapter (the chapter on exemptions) with respect to exemptions from the estate of the deceased father," and concludes, "so far as such provisions are applicable." If this section intends that in some respect the tenure of the minor children of a deceased mother should differ from that of the children of a deceased father, it is to be regretted that it has not been clearly expressed. The difference which counsel have been able to find rests upon that strained construction of section 209 of the Constitution, our consideration of which has been heretofore sufficiently stated. No such difference appears to have occurred to court or counsel in Quinn v. Campbell, supra. The title to the homestead vested absolutely in decedent's minor children. Munchus v. Harris, 69 Ala. 506.

[3] (2) The surviving husband, M. M. Williams, still in life, took a life estate in the land, and to the enjoyment of that life estate, at least, appellant is entitled under his deed. This contention is based on section 2534 of the Code of 1896 reading as follows:

"2534. *Husband's Distributive Share of the Wife's Estate.* If a married woman having a separate estate die intestate, leaving a husband living, he is entitled to one-half of the personalty of such separate estate absolutely; and to the use of the realty during his life, unless he has been divested of all control over it by a decree of a court of chancery, as hereinafter provided."

The operation of this section is limited by the provision of the later enactment reproduced in section 2077 of the Code of 1896. Therefore, this contention cannot be sustained.

[4] (3) It is alleged that appellee's demand is stale and also barred by the statute of limitation. By reason of his inheritance from his son, James N. Williams, M. M. Williams became tenant in common with the surviving brothers and sisters of said James N. in the equity of redemption in the property then under mortgage. His purchase at the foreclosure sale inured to the benefit of all the owners. Such is the general rule. Inglis v. Webb, 117 Ala. 393, 23 So. 125; 38 Cyc. 40; 11 Am. & Eng. Encyc. Law (1st Ed.) 1082, where a score of cases are cited to sustain this text: "The general rule is that a cotenant's purchase of an outstanding title enures to the benefit of all." Appellant relies on an expression in Savage v. Bradley, 149 Ala. 172, 43 So. 20, 123 Am. St. Rep. 30, where the court, holding that one cotenant cannot, by redeeming from a mortgage sale, invest himself with an indefeasible title to the common property, conceded that a cotenant may at

forced sale buy the estate and thereby become the owner in severalty, and appellant notes the fact that M. M. Williams did not redeem from a mortgage sale, but became the purchaser at a forced sale. But in Inglis v. Webb, supra, there was a balance of purchase money due from land purchased for two persons. The court said they occupied in effect the position of two mortgagor-tenants in common of the mortgaged land, and held that when one cotenant paid the balance of the purchase price, taking conveyance to himself, his payment was no more than the removal of an incumbrance on the common property which inured to the benefit of his cotenant to the extent of his interest. In the present case, Williams, the purchaser at foreclosure, and his cotenants were asserting no hostile claims against each other prior to the foreclosure sale. They claimed title from a common source. The obligation to pay off the mortgage affected the title to the property when it passed by inheritance to said Williams and his coheirs; it was as much his duty as theirs to pay it off, and it would be inequitable to permit him to take advantage of the common default, and so acquire the title of his cotenants at a foreclosure sale. Shelby v. Rhodes, 105 Miss. 255, 62 So. 232, Ann. Cas. 1916D, note p. 1308. Our opinion then is that, for aught appearing, Williams purchased the property for his own and the benefit of his cotenants to the extent of their respective interests, they became tenants in common, and that his possession became adverse to his cotenants only when, if ever, it amounted to an actual ouster of them, that is, a repudiation of their claims brought home to their knowledge. Ashford v. Ashford, 136 Ala. 637, 34 So. 10, 96 Am. St. Rep. 82; Oliver v. Williams, 163 Ala. 383, 50 So. 937.

[5, 6] The inference is that M. M. Williams remained in possession after he caused this land to be set apart to the minor children of his deceased wife, but there was nothing to indicate a claim of exclusive title in himself until he undertook to convey to his second wife in 1912, less than ten years prior to the filing of the bill in this cause. In the meantime he had caused the will of his first wife to be probated; but that gave no unequivocal notice of his claim in severalty because, for one reason, at least, the will simply made him the general devisee and legatee of testatrix, this property not being described. Apropos of this situation we may quote from the opinion in Ashford v. Ashford, supra:

"Again, if he took possession as administrator, or at any time held possession in that capacity, and while in possession under that claim of right, he actually passed the possession over to his wife, but continued as before to reside on the land, and there were no visible marks of any change of possession from him to his wife, and no repudiation by him of the original character of his possession brought to the knowledge of the heirs, they would still be entitled to recover against him and against those now claiming under her, however long such possession of the wife may have continued before suit brought."

The deed to appellant from her husband, if accompanied by an open change of possession, it may be conceded, would have put the statute of adverse possession in motion; but there was no such change and, moreover, the deed was executed within 10 years before this bill was filed. Appellees were not barred of their rights nor were any special circumstances shown upon which to base a finding of laches.

Our conclusion is that the decree of the trial court should be affirmed.

Affirmed.

ANDERSON, C. J., and GARDNER and MILLER, JJ., concur.

### On Rehearing.

SAYRE, J. In our original opinion we endeavored to state and consider the propositions relied upon for a reversal of the decree in this cause. We failed to observe appellant's contention, now stressed in the brief on rehearing, that, conceding—but for the argument only—all else to have been correctly decided for appellees, appellant was entitled to a decree for the reason that appellees delayed too long, were guilty of laches in making their offer to contribute their just proportion of the sum paid by appellant in purchasing the property at foreclosure sale, an offer made for the first time in the original bill in this cause. The question thus presented has now been duly considered.

In Johns v. Johns, 93 Ala. 243, 9 So. 419, where a tenant in common purchased at tax sale, the question was whether he could so cut off the right of his cotenants and acquire the exclusive title in himself. The facts were that "nearly 11 years after the tax sale, nearly 9 years after the tax deed was executed, and some 5 years after the death of the widow, the life tenant under testator's will"—complainants and defendant were remaindermen, tenants in common—complainants filed their bill for a sale of the land for partition against their cotenant, purchaser at the sale, who had been in possession since the year of the tax sale. Stone, C. J., answering the question for the court, said:

"We hold that he could not, even on the facts shown in this case. The interest and duty to prevent a loss of the freehold by tax sale, were as mandatory and binding on him as on his cotenants in remainder. He must be content with the right the law gives him; the right which accrues to one who pays taxes for which others are equally bound. He is entitled to reimbursement out of the use and occupation. He must be treated as a trustee of the title, for the equal benefit of all the cotenants" (citing authorities).

In Savage v. Bradley, 149 Ala. 169, 43 So. 20, 123 Am. St. Rep. 30, it was said in effect, that the relation of cotenancy is a relation of trust and confidence, and that from it presumptions of utmost favor to cotenants arise to the end that the title and rights of each in the common estate may be preserved unimpaired. The authorities are said to be uniform in affirming the general rule that a cotenant who acquires a tax title to the common property cannot assert such title against his co-owners except as a basis for requiring contribution to repay him for his expenditure (7 R. C. L. p. 863); this for the reason that it is the duty of each co-owner to pay taxes. Donnor v. Quartermas, 90 Ala. 164, 8 So. 715, 24 Am. St. Rep. 778. But, when it is observed that the parties to this cause became cotenants by inheritance so that the lien for the mortgage debt affected the interests of each and all of them, we can see no reason why the principle declared in Johns v. Johns, supra, should not apply with full force to the case in hand. Accordingly we find the rule to be well settled in most jurisdictions, though there are cases to the contrary, notably in the federal courts (Starkweather v. Jenner, 216 U. S. 524, 30 S. Ct. 382, 54 L. Ed. 602, 17 Ann. Cas. 1167) "that where property owned in common is sold pursuant to a power contained in a trust deed, or at a judicial sale, to satisfy an obligation which rests alike upon all of the tenants in common, one proprietor cannot purchase the lands and cut off the right of his coproprietors to contribute to the purchase price and participate in the benefits of the purchase." Note to Starkweather v. Jenner, supra, in 17 Ann. Cas. p. 1169. To this effect we cited in our opinion on the original submission Inglis v. Webb, 117 Ala. 397, 23 So. 125; Shelby v. Rhodes, 105 Miss. 255, 62 So. 232, Ann. Cas. 1916D, 1306; and the encyclopædias.

[7] In Randolph v. Vails, 180 Ala. 89, 60 So. 159, and in other of our cases, it has been held that the purchase at a mortgage sale by a cotenant inures to the benefit of all the tenants in common, provided they, within a reasonable time, elect to so treat the purchase. But the right which a tenant in common has to participate in a purchase of the common property by a cotenant is an equitable right, and by the courts taking our view of the matter it is generally held, as it was in Randolph v. Vails, supra, that a cotenant, to avail himself of the benefits of such purchase, must contribute or offer to contribute to the expense thereof within a reasonable time. 17 Ann. Cas. note, p. 1171. And the main question now in dispute is whether appellees have complied with this requirement of the authorities.

In Savage v. Bradley, supra, it was held that in ordinary cases, by analogy to the terms fixed for the exercise of the statutory right of redemption, 2 years is the limit of time within which election by a cotenant should be made in order to avail himself of the redemptioner's act, but the court, in view of the relation involved, refused to declare any inexorable rule, "since in the very nature of the relation the conduct and condition of the co-owners might materially change the standard," refused to declare 10 years to be a reasonable limit in all cases. That, however, is not precisely this case.

[8] Appellant, Myrtie S. Williams, is claiming under a deed from a tenant in common who was the father of his (grantor's) cotenants, and, at the time of his purchase at the foreclosure sale, one of his cotenants was a minor. The property came down by inheritance from the wife of the purchaser, the mother of his cotenants. Appellant's grantor has remained continuously in possession since the death of his wife, the former owner. These circumstances, without more, might serve to differentiate this from the ordinary case to the advantage of appellees. But the reliance is not upon these facts alone. Complainant is seeking to be let into the benefits of her cotenant's purchase at the foreclosure sale. Judge Freeman in his work on Cotenancy and Partition (2d Ed.) § 156, says:

"The right of a cotenant to share in the benefit of a purchase of an outstanding claim is always dependent on his having, within a reasonable time, elected to bear his portion of the expense necessarily incurred in the acquisition of the claim. A most natural and material inquiry, then, is what is a reasonable time. To this inquiry no positive answer can be given. In this, as in all other questions in regard to reasonable time, no doubt each case must necessarily be determined upon its own peculiar circumstances. The cotenant asking a court of equity to award him the benefit of a purchase, must show reasonable diligence in making his election. Whatever delay he may have occasioned must be entirely consistent with perfect fair dealing on his part, and in no wise attributable to an effort to retain the advantage, while he shirks the responsibilities of the new acquisition."

We discover no objection to the 2-year rule announced in Savage v. Bradley in its application to ordinary cases, that is, to cases in which the parties are sui juris, competent, and the relevant facts are understood by all hands. But laches cannot within limits which do not affect this case be imputed to parties who are not informed of the adverse claim and the necessary propriety of asserting their right, for one very just definition of laches is "an implied waiver arising from a knowledge of existing conditions and an acquiescence in them." 21 C. J. 210. This principle is recognized in Winsett v. Winsett, 203 Ala. 373, 83 So. 117. "Mere delay in the assertion of a right, without more, does not in itself constitute laches." Montgomery Light Co. v. Lahey, 121 Ala. 137, 25 So. 1006. Sufficiently indeed for the purposes of this case, though in very broad terms, laches is

defined in the quotation from Judge Freeman, supra, viz., to avoid the imputation of laches from prolonged delay, it must be consistent with perfect fair dealing. Now, then for the facts in addition to those already shown: Complainant Harry P. Williams was born in 1890. After his mother's death he early became a morphine addict and divided most of his time between the asylum for the insane at Tuscaloosa, reformatories, and industrial schools. But in May, 1917; he joined the army, and upon that occasion, according to his testimony, defendant Myrtie and her husband, complainant's father, distinctly recognized his right in the property the subject of the present litigation, nor, prior to that time, had either of them ever informed him that he had no interest in the property left by his mother.

Complainant Virginia Massie, 15 years older than Harry P., testified that as late as 1922 her father told her that she had an interest in the property, nor had she ever been informed that his wife, defendant Myrtie S. Williams, had or claimed an interest in the property. Further, she testified that in the year 1905 her father told her that the property would not be sold and that, "if anything come up," she would be notified; that she first learned of the foreclosure sale a few months prior to the filing of this bill. Neither M. M. Williams nor Myrtie, his wife, has seen fit to deny anything of this testimony, and we see no alternative but to accept it at its face value. So accepted, our judgment is that it disproves the charge of laches brought against complainants, with result that the decree in their favor ordering a sale for partition, allowing the amount bid at the foreclosure, with interest, as a charge upon the proceeds, and an accounting for rents and profits received in the meantime, must be affirmed.