185 So. 411

### BAILEY v. BOND et al.
#### 4 Div. 51.

Supreme Court of Alabama.

Dec. 22, 1938.

G. D. Halstead, of Headland, for appellees.

F. W. Fish, of Abbeville, for appellant.

FOSTER, Justice.

This is a suit in equity by appellant and the controversy is with Dr. L. T. Hutto, or now his legatee and executrix, he having died pending the suit.

The equity of the bill is a sale of land for division. Dr. Hutto claimed to own it in its entirety, and that question was decided in his favor by the trial court. The essential facts are without dispute.

On December 4, 1890, the land was owned by Ausborn Jones, when he and his wife, M. A. R. Jones, executed a mortgage to one A. D. Wood. On December 16, 1897, that mortgage was foreclosed and Robert Newman became the purchaser and received a foreclosure deed. Ausborn Jones was then dead, and left surviving his said wife and seven minor children, of whom complainant was one, having been born July 30, 1891. On December 29, 1897, Robert Newman and wife executed a deed with statutory warranty to the widow by name, reciting payment of $308 in hand, and without express reference to the mortgage nor its foreclosure.

There is no evidence as to the fact or manner of payment of the consideration to him, nor by whom, except as recited in the deed. No mortgage back is shown.

On December 8, 1899, M. A. R. Jones executed a deed to Robert Newman with general warranty reciting a consideration of $393.18, in hand paid, with no reference to extraneous matter. There was no explanatory evidence.

On January 15, 1902, Robert Newman executed another deed to M. A. R. Jones, reciting a consideration of $397.97 paid by the

Abbeville Mercantile Company, reciting further that it is with the agreement that she will execute a mortgage to said company on said property. The mortgage does not appear in the record. There is no explanatory evidence.

On December 26, 1911, M. A. R. Jones and her son Sam Jones and his wife, who were then of age, executed a mortgage to Dr. Hutto to secure a debt of $2,587.84. There is no evidence how the money was used, nor how the supposed debt to the Abbeville Mercantile Company was paid. But there is no question here about that. Dr. Hutto had not been connected with the transaction before that. Ausborn Jones, his widow and some of the children had resided on the land. M. A. R. Jones died in 1912. In July 1912 this complainant became of lawful age.

On November 9, 1912, after the widow's death, the Hutto mortgage was foreclosed, and he became the purchaser and a deed was made to him on that day by the auctioneer; and he immediately went into possession of the land, and has held it ever since. On December 7, 1912, soon after the foreclosure, he secured a deed of conveyance from all the children except complainant here and a sister Nannie Bailey who was made a party respondent to this bill; but she has made no defense and a decree pro confesso was entered against her.

Sometime prior to March 24, 1914, complainant and her sister Nannie sued Dr. Hutto and others in equity concerning this land. The file and record of that suit are not available and its nature not disclosed. On March 24, 1914, there is an entry on the trial docket "dismissed for want of prosecution. Complainant taxed with cost."

Complainant alleges that she permitted this to be done induced by the fraudulent representations of Dr. Hutto, which he denied in depositions taken before his death. Complainant testified that she did not know of the fraud until in the fall of 1935, and then filed this bill on February 25, 1936. But no relief is sought in respect to the decree or proceedings in that litigation, whatever it might have been.

Dr. Hutto had been in possession of the land under his foreclosure deed from a short time after its execution until this suit was filed, which was more than twenty-three years. Complainant had been of lawful age all that time. She had not so far as this record shows made any effort to contribute to the redemption fund paid by M.

A. R. Jones, and does not now offer to do so.

■ But we hold that it would now be too late to do so. Savage v. Bradley, 149 Ala. 169, 43 So. 20, 123 Am.St.Rep. 30; Williams v. Massie, 212 Ala. 389, 102 So. 611; Gilb v. O'Neill, 225 Ala. 92, 142 So. 397, 85 A.L.R. 1526. The redemption or purchase of the land by her mother, one of the mortgagors, would not inure to the benefit of the children, except upon a contribution to the redemption fund or purchase money within a reasonable time thereafter. Sullivan v. Parker, 228 Ala. 397, 153 So. 858; Id., 234 Ala. 178, 174 So. 608.. There is nothing to show that M. A. R. Jones did not use her own funds in so redeeming. Prima facie she did. The deed so recites. Sullivan v. Parker, supra.

Complainant was not in the attitude of a tenant in common toward this land while so possessed by Dr. Hutto. She had only an imperfect equitable right, if anything, to rehabilitate her interest in the land and then become a tenant in common. She did not assert it within a reasonable time, and has never done so. So far as this record shows she had no other claim on the land nor title to it. On the purchase of it from Newman by her mother the title was made to the mother. Appellant misunderstands the law to be that thereby she became a tenant in common with her mother. The cases do not so hold. She only had an inchoate equity which was lost by the lapse of time.

■ Moreover, complainant would not be in position to assert her right if, as in the second trial of the Sullivan Case, supra, it appeared that the redemption from Newman was effected with funds of the estate or of the family, so as to give her a perfect equity. When her mother, the widow, and one son mortgaged the land to Hutto, purporting to pass the entire interest, and that mortgage was foreclosed and Hutto went into possession under his purchase at the sale openly and exclusively, his possession was not encumbered with the same presumption of subserviency to the rights of the other heirs as would exist while the land was in possession of the widow, though her possession might have been in recognition of their claims. This was pointed out in Woodstock Iron Co. v. Roberts, 87 Ala. 436, 6 So. 349; Kidd v. Borum, 181 Ala. 144, 61 So. 100, Ann.Cas.1915C, 1226; Moore v. Elliott, 217 Ala. 339, 116 So. 346.

■ And certainly when the possession of Hutto under his purchase has been for

a period of twenty years, without any sort of subserviency to those rights, the doctrine of staleness of demand, also called the rule of repose and prescription, cut off all power to assert them. Wilkerson v. Wilkerson, 230 Ala. 567, 161 So. 820; Alabama C. & C. Co. v. Gulf C. & C. Co., 171 Ala. 544, 54 So. 685; Oxford v. Estes, 229 Ala. 606, 158 So. 534.

We are not now considering the ten year period of limitation during which complainant was of lawful age. We may assume that neither rule, the twenty year nor ten year period, has application between tenants in common where one is in possession with nothing to rebut a presumption of subserviency to the rights of his co-tenants. Winsett v. Winsett, 203 Ala. 373, 83 So. 117; Ashford v. Ashford, 136 Ala. 631, 34 So. 10, 96 Am.St.Rep. 82. But see Alabama Fuel & Iron Co. v. Broadhead, 210 Ala. 545, 98 So. 789; Miller v. Vizzard Investment Co., 195 Ala. 467, 70 So. 639.

■ But the record here shows that the presumption is rebutted (1) because Hutto went into possession under a purchase purporting to convey the entire interest, though it may be assumed that his grantors were only tenants in common. Woodstock Iron Co. v. Roberts, supra, and other cited cases.

■ True, Hutto did immediately seek to obtain a quitclaim deed from all the heirs, and they executed it for a small recited consideration. Complainant and her sister refused to do so. This might manifest a knowledge that they may have some claim of right which he wished to secure. It did not necessarily manifest a purpose to recognize that they had any just claim. Adverse possession is not affected by knowledge of an outstanding claim. State v. Conner, 69 Ala. 212 (6); Kidd v. Browne, 200 Ala. 299, 76 So. 65. His papers show that he was undertaking to purchase by his mortgage and its foreclosure the entire interest for a large consideration. His possession under them is presumed to be adverse. But if his possession is assumed to be subservient by that circumstance, it is shown that complainant knew soon afterwards that it was adverse to her, by (2) the implications of her suit against Hutto begun about 1913 and ended in 1914, which are clear that she knew of such assertion of full ownership and possession. (3) Her testimony, that as an inducement to a dismissal of her suit he falsely claimed that he had a court deed.

■ She does not attack that decree for the fraud which she says was recently discovered. But were she doing so, the twenty year period would bar the right under the principle declared in Wilkerson v. Wilkerson, supra. But the fact is clear that for more than twenty years and while she was of full age she knew that he claimed to be the sole owner of the land and had exclusive possession. This is sufficient to bar any right to rehabilitation, or to relief for fraud, or to assert a perfect equity by having contributed, if so, to the redemption or repurchase of the land by her mother.

From all of this we are clear that complainant has shown no right in this land now sought to be enforced, nor such as entitles her to a decree of sale for division. The trial court so held without error.

Affirmed.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.