117 So.2d 170

**Albert L. ROSEMAN, individually and as administrator, et al.**

v.

**Annie DAMSKY, individually and as trustee, et al.**

**6 Div. 333.**

Supreme Court of Alabama.

Dec. 10, 1959.

Albert Boutwell and John S. Foster, Birmingham, for appellants.

Leader, Tenenbaum, Perrine & Swedlaw, Birmingham, for appellees.

SIMPSON, Justice.

This cause was submitted for final decree in the Circuit Court in Equity of Jefferson County on a substituted Bill of Complaint wherein Albert L. Roseman, Ralph J. Roseman, Malvin Roseman and Dorothy R. Kovnat. were complainants and Albert L. Roseman as administrator of the estate of Bella Roseman, deceased, and Albert L. Roseman, as administrator de bonis of the estate of Max Roseman, deceased, were cross-complainants. Annie Damsky, Leonard Allen Damsky, Zac Jerome Damsky, Bert Solomon Damsky, Jacob Allen, Annie Damsky, as trustee under the will of Mose Damsky, Leonard Allen Damsky, as trustee under the will of Mose Damsky, Zac Jerome Damsky, as trustee under the will of Mose Damsky, Al DeMent Chevrolet Company, a corporation and Arline Frances Lerner, were respondents.

The evidence was taken ore tenus before the trial court and resulted in a decree denying the relief prayed for, and from which this appeal is prosecuted. The bill sought to set aside a foreclosure deed and the sale for division among alleged joint tenants of certain described lands located in the City of Birmingham, Jefferson County, Alabama.

The following facts, established by the evidence are sufficient for an understanding of the case: The suit property was acquired by Rodabe Realty Co., Inc. in 1925. In February, 1928, Rodabe transferred by deed the property to its stockholders, Max Roseman, Mose Damsky, and Jacob Allen. In 1929 Max Roseman and wife, Bella Roseman, Mose Damsky and wife, and Jacob Allen and wife executed a mortgage to the First National Bank of Birmingham for $30,000. In 1930 Max Roseman by endorsement transferred his stock in Rodabe to Damsky and Allen. In 1939 an involuntary petition in bankruptcy was filed against Max Roseman in the District Court for the Southern Division of the Northern District of Alabama and he was adjudicated a bankrupt the same year. Max Roseman listed in his schedule of assets an undivided ⅓ interest in the suit property and scheduled the First National Bank as mortgage creditor. In 1932 the Bankruptcy Court, upon the motion of the trustee that there was no equity in the property, entered an order rejecting the

same as burdensome to the bankrupt estate. In 1932 Max Roseman was discharged from bankruptcy.

In 1933 a series of letters sent to Damsky and memoranda regarding payments and extensions were introduced as being sent by the First National Bank. In 1934 Max Roseman died leaving a last will and testament, and the suit property was not listed as an asset. Petition for letters testamentary on Max Roseman's estate showed assets of "home and personal property estimated to be worth about $5,400". His will devised all his property absolutely to his wife, Bella Roseman. Letters testamentary were granted to Bella Roseman, and the estate is still pending.

In 1934 the First National Bank of Birmingham filed a claim for the $30,000 mortgage indebtedness against Roseman's estate in the probate court. Also in 1934 the bank notified by two letters Mrs. Bella Roseman, executrix, of the filing of the claim. Also, in 1934, Mr. Kinman, an Assistant Trust Officer of the bank, made a memorandum of a conversation with Max Roseman's son regarding the indebtedness. The bank all the while was pressing Damsky, the only one of the three signatories to the $30,000 note who had any assets, for payment or adjustment of this debt. In the latter part of 1934 the bank foreclosed the mortgage. Damsky became the purchaser for $31,041.66 and in turn executed a mortgage to the bank securing the principal sum of $30,000 with final maturity of $27,500, payable in 1937. Damsky refinanced the difference by some personal obligations of his own. In 1937 Damsky conveyed an undivided ½ interest in the property to his former partner, Jacob Allen. In 1944 the mortgage to the First National Bank was fully paid and satisfied.

Mose Damsky also died in 1944.

In 1948 the Allen and Damsky interests sold the property to Al DeMent Chevrolet Co. for $65,000, of which $40,000 was evidenced by a purchase money mortgage. In 1951 Bella Roseman died at Miami Beach, Florida, intestate and letters of administration were granted Albert Roseman, her son. The inventory filed did not list the subject property. This estate is still pending.

Also in 1951 Max Roseman's two sons found in a lock box of Mrs. Roseman's the deed from Rodabe Realty Co. to Damsky, Roseman, and Allen and immediately employed attorneys to look into the question of whether or not they still had an interest in the property. The attorneys advised them that they did and these proceedings were instituted.

The rule has been established by a long line of cases in this state that when one of several co-owners of an encumbered estate bids it in at a judicial sale for the satisfaction of a common obligation, the purchase inures to the benefit of all cotenants, provided they stand on their rights, and seasonably contribute their respective proportions of the amount paid. Inglis v. Webb, 117 Ala. 387, 393, 23 So. 125; Winsett v. Winsett, 203 Ala. 373, 83 So. 117; Williams v. Massie, 212 Ala. 389, 102 So. 611; Johns v. Johns, 93 Ala. 239, 9 So. 419; Gilb v. O'Neill, 225 Ala. 92, 142 So. 397, 85 A.L.R. 1526; Sherrill v. Sandlin, 232 Ala. 389, 168 So. 426; Gordon v. McLemore, 237 Ala. 270, 186 So. 470; Bailey's Adm'r v. Campbell, 82 Ala. 342, 2 So. 646; Jackson v. King, 82 Ala. 432, 435, 3 So. 232; Howze v. Dew, 90 Ala. 178, 7 So. 239, 24 Am.St.Rep. 783; Courtner v. Etheredge, 149 Ala. 78, 43 So. 368; Jones v. Matkin, 118 Ala. 341, 24 So. 242; Sullivan v. Parker, 228 Ala. 397, 153 So. 858; Kelly v. Carmichael, 221 Ala. 371, 129 So. 81; Childress v. Smith, 227 Ala. 435, 150 So. 334; 62 C.J. 465, 86 C.J.S. Tenancy in Common § 60, p. 428.

It is the appellants' contention that the long delay in asserting their right and offering to contribute their proportionate share of the amount paid by Damsky was due to lack of knowledge on the part of Mrs. Roseman that the foreclosure had taken place. The Court found and the evi-

dence supports its finding, that Mrs. Roseman knew that the mortgage debt existed and knew that the bank was pressing for payment some sixteen years before her death, and immediately after the death of her husband. She had joined in the execution of the mortgage and the fact that the indebtedness was due was twice called to her attention. There is evidence that one of her sons had conferred with the bank officials regarding the indebtedness. From this evidence the trial court found that she had knowledge of the foreclosure, or knowledge which would have led to a discovery thereof had she pursued the matter. Nothing was done about the matter by appellants or their predecessor in title for more than eighteen years.

This court said in the case of Savage v. Bradley, 149 Ala. 169, 43 So. 20, with regard to what constitutes a reasonable time in which a co-tenant must assert his claim after his co-tenant has acquired an outstanding title through purchase at a tax sale or foreclosure sale, etc., " * * * in ordinary cases * * * by analogy to the term fixed for the exercise of the statutory right of redemption, two years is the limit of time within which election by a cotenant should be made in order to avail himself of the redemptioner's act". And subsequently in the case of Williams v. Massie, 212 Ala. 389, 102 So. 611, 613, 615, this court said, "We discover no objection to the 2-year rule announced in Savage v. Bradley in its application to ordinary cases, that is, to cases in which the parties are sui juris, competent, and the relevant facts are understood by all hands. But laches cannot * * * be imputed to parties who are not informed of the * * * necessary propriety of asserting their right."

■ The trial court found, and we think correctly, that Mrs. Roseman was aware of the necessary propriety of asserting her right and chose not to do so. At the time of the foreclosure sale and immediately prior thereto and immediately subsequent to the same, there was evidence that the property was not worth much if anything more than the amount of the mortgage indebtedness. This fact would explain Mrs. Roseman's election not to participate in the payment of the indebtedness.

We are in agreement with the trial court that the instant case is, in pertinent respects, similar to Ruffin v. Crowell, 253 Ala. 653, 46 So.2d 218, 223. In that case one who had become a co-tenant with the complainants, all heirs of Marion Crowell, Sr., had purchased the property at a foreclosure sale when the mortgagee foreclosed an existing mortgage on the property. This court said:

"When Odessa bought the land from the bank, it was for the benefit of the other heirs of Marion Crowell, Sr., who then held their rights as such heirs, provided within a 'reasonable time thereafter they elect to contribute and reinstate their title.' Under ordinary circumstances two years is a reasonable time in which to do so. Savage v. Bradley, 149 Ala. 169, 43 So. 20, 123 Am.St.Rep. 30; Randolph v. Vails, 180 Ala. 82(7), 60 So. 159; Williams v. Massie, 212 Ala. 389, 102 So. 611; Winsett v. Winsett, 203 Ala. 373, 83 So. 117; Gilb v. O'Neill, 225 Ala. 92, 142 So. 397, 85 A.L.R. 1526; Bailey v. Bond, 237 Ala. 59, 185 So. 411; Penny v. Penny, 247 Ala. 434, 24 So.2d 912. * * *

"The question of delay here is not based on the principle of laches, which has well defined standards. But equity has by analogy applied the period of two years which is fixed by law in which to exercise the statutory right of redemption. This period applies in ordinary cases of this sort. For it not to apply there must be some circumstances which make it inequitable. That is not shown here as to these appellants. They abandoned all effort to raise the money to pay the bank after a failure to obtain a loan from the Federal Land Bank and after the Chatom bank filed suit to foreclose. Odessa and Dock alone pursued the

matter without the aid of any of the others, and after they had apparently abandoned all hope of succeeding. The circumstances were in no respect sufficient to extend the period ordinarily applicable. There was nothing extraordinary which tended to lift the period so declared for ordinary situations."

Likewise in the case at hand the court found that there was no effort on the part of Mrs. Roseman to pay the bank. There was evidence that she had the money with which to pay the share of the indebtedness attributable to her proportionate share of the property had she so desired. This she did not do. We are in agreement with the trial court that she thereby elected not to assert her right to this property and instead chose to abandon all interest in it.

We find nothing in the record which would warrant extending the time beyond the analogy of the statute mentioned *supra,* much less beyond eighteen years, in which appellants could assert their right and offer to contribute their share of the amounts paid.

The trial court having found that appellants, or their predecessor Mrs. Roseman, did have knowledge of the foreclosure, it is unnecessary to consider the remaining assignments of error.

The trial court found that there was no evidence of fraud or collusion on the part of Damsky in effecting the foreclosure and becoming a purchaser of the property at the sale. We cannot say this finding was palpably erroneous and of consequence will not disturb it. Penny v. Penny, 247 Ala. 434, 24 So.2d 912; Frank v. Johnson, 261 Ala. 642, 75 So.2d 153.

We are unable to declare error to reverse in the findings below.

Affirmed.

LIVINGSTON, C. J., and GOODWYN and COLEMAN, JJ., concur.