## STARKWEATHER *v.* JENNER.

APPEAL FROM THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 114.　Argued January 28, 1910.—Decided February 28, 1910.

In this case the charges of fraud and collusion on the part of the defendants are wholly unsupported.

The rule that equity may convert into a trustee a co-tenant who attempts to buy an outstanding hostile title does not apply where the common property is sold at *bona fide* public sale under legal process or power in a trust deed. At such a sale, and in the absence of fraud or deceit, any one of the co-tenants is as free to buy as any of the general public, and several of the co-tenants may combine without notice to the others to purchase for themselves.

A judicial sale for inadequate price resulting from combination of bidders is voidable, not void, and one who would complain must after discovery seasonably elect whether he will avoid it or not. A delay of four years where the property is of speculative character and has largely increased in value meanwhile is unreasonable.

27 App. D. C. 348, affirmed.

THE facts are stated in the opinion.

*Mr. Richard P. Evans* for appellant.

*Mr. B. F. Leighton*, with whom *Mr. R. Golden Donaldson* was on the brief, for appellees.

MR. JUSTICE LURTON delivered the opinion of the court.

The appellant, George B. Starkweather, was the owner of a parcel of unimproved land known as the Crescent Heights, in Washington, D. C., composed of two contiguous lots, one of seven and the other of three acres. In January, 1892, pursuant to a plan arranged between himself and certain persons associated with him, and styled herein the syndicate,

he conveyed this tract to defendants Croissant and Johnson, as trustees, for the benefit of the persons who should contribute to the purchase price, as tenants in common, in the share and proportion in which they respectively contributed, with power to control, manage, lease, sell and convey, in their discretion, as should be desirable or advantageous to the parties interested. Those contributing or proposing to contribute agreed among themselves, by a separate paper, that the price, including the discharge of incumbrances resting upon the property, should be $75,000, divided into shares of $2,500 each, and each person accordingly subscribed for such number of shares as they elected to take, agreeing that Croissant and Johnson should represent them as trustees in the purchase, with full power to manage, sell and convey, receiving a commission for their service. Among those so contributing originally, or by substitution, were the trustees Croissant and Johnson, the appellant Starkweather, who was to receive, and did take, eleven shares, fully paid up, as and for part of the purchase price, and the appellee Jenner, who ultimately came to own four of such shares. The full number of thirty shares contemplated were never subscribed, six remaining unsold in the hands of the trustees. This fact, from whatever cause, seems to have led to the inability of the syndicate to pay off the incumbrances which were to be assumed and paid off as part of the price. Among these incumbrances were several deeds in trust or mortgages securing obligations of the vendor appellant.

The certificates to subscribers were issued by Croissant and Johnson, and recited, among other things, that they held the property in trust, and that the holder was a contributor to the purchase price to the extent of $2,500, and the owner of an undivided one-thirtieth interest, and that such interest "shall at all times be subject to assessment for its proportionate part of money necessary to pay expenses incurred in the execution of the trusts as provided in the deed to said trustee, . . . and in default of such payment the said

trustees . . . are hereby authorized to sell the interest of such person so in default," etc.

Out of the money paid in by the subscribers a part was used by the trustees in paying off incumbrances, keeping down interest and in other expenses, but something like eleven thousand dollars was paid over in money to or on account of the vendor Starkweather.

Among the trusts upon the property was a deed in trust upon the seven-acre parcel to the appellees, Duval and Cole, as trustees, to secure an obligation created by Starkweather for $7,553.34 to a Mr. Gaither, executed January 29, 1889, and maturing in four years. In 1893 this debt matured. By agreement the enforcement of the trust was postponed upon payment of interest. But, finally, there was a default and a sale directed by Gaither. The property was, accordingly, advertised by the trustees and sold at public outcry in 1897 and bid in by one Ricker, acting for and as agent of the appellant. The time for complying with the sale by Ricker was extended upon the payment by appellant of $300 for each of two extensions. Default in complying with the terms of sale was, however, again made, and the property readvertised. Appellant attempted to forbid such resale, and filed a bill for that purpose, which was not dismissed until February, 1898, when the property was again advertised and offered for sale by Duval and Cole, the trustees, and knocked down to one Silver, acting as an agent for Starkweather. The terms of this second sale were not complied with, and the property was at once recried and sold to the appellee Jenner for $17,100, acting, as it turned out, for himself and certain others, who, like Jenner, were members of the original purchasing syndicate, or holders of certificates acquired later from those who were. Jenner complied with the terms of sale and paid the full purchase money and accepted a deed from the trustees. After paying off the Gaither debt the remainder of the price paid by Jenner was distributed to other lienors, under a bill in equity filed for that purpose, under which final

decrees have long since been made and the trustees exonerated.

The object of the present bill is to set aside this deed by Duval and Cole to the appellee Jenner, and revest the title in Croissant and Johnson as trustees for the syndicate; or, in the alternative, declare Jenner a trustee holding the seven-acre parcel, after his reimbursement, for the benefit of the syndicate subscribers.

The charges of the bill abound in accusations of fraudulent collusion between Jenner and the other appellees to bring this seven-acre lot to sale under the Duval and Cole trust, and thereby the elimination of appellant as the largest holder of certificates in the syndicate. It is among other things said that Croissant and Johnson wilfully suffered a default. That they had certificates unsold and money in their hands and power to assess the members of the syndicate to raise means to pay off the incumbrance and thus save the property for the benefit of all concerned; but had wilfully and collusively let the property be brought to sale, and in fact, persuaded Gaither or his trustees to proceed under the trust. These charges of collusion or fraudulent conduct upon the part of either Gaither, the creditor, or his trustees, Duval and Cole, are utterly unsupported. Their course was from beginning to end, so far as this record shows, dictated by prudent business conduct, and great consideration for appellant in his natural desire to prevent an enforcement of the trust. So far as Croissant and Johnson are concerned, it is not shown that they had in any way colluded with either the creditor, his trustees, or with the purchaser at the Duval and Cole sale, or that they had the slightest interest in the acquisition of this seven-acre tract by Jenner or his associates. They are not shown to have misapplied the funds of the syndicate, or to have had any funds with which to meet and pay off either the principal or interest of the Gaither debt. That they did not assess the shareholders, as they might have done under the terms of the trust to raise money to

pay off this and other incumbrances, is true. Their excuse
is that most of the members could not pay or be made to pay
and that all were unwilling to pay. That a sale of their certifi-
cates would have been unavailing, as it would have been only
to sell the property subject to heavy incumbrances, and a sale
of a mere equity. But whether they were derelict or not, they
are not shown to have acted in collusion with either Gaither,
his trustees, or with Jenner and his purchasing associates.

But it is said that Jenner's relation as tenant in common
to appellant and those associated with him as owner of the
property sold to pay off this paramount lien, forbid his
purchase. That there is such a community of interest be-
tween those who hold a common title as to forbid one such
co-tenant from acquiring any benefit from the acquisition
of an outstanding superior title, is undeniable. That a court
of equity upon timely application will convert such a purchas-
ing tenant into a trustee for the common benefit, is true.
The doctrine is considered and applied in *Rothwell* v. *Dewees*,
2 Black, 613, and *Turner* v. *Sawyer*, 150 U. S. 578. For
much the same reason one tenant may not hold adversely
the common property against another, though he may do so,
if he act openly, and, in that event, the statute will run in
his favor. *Elder* v. *McClaskey*, 70 Fed. Rep. 529, 542.

But it is plain that the principle which turns a co-tenant
into a trustee who buys for himself a hostile outstanding title,
can have no proper application to a public sale of the com-
mon property, either under legal process or a power in a
trust deed. In such a situation, the sale not being in any wise
the result of collusion nor subject to the control of such a
bidder, he is as free, all deceit and fraud out of the way, as
any one of the general public.

Even a trustee has been held competent to purchase the
trust property at a judicial sale, which he has no interest in,
nor any part in bringing about, and which sale he in no way
controls. *Twin Lick Oil Company* v. *Marbury*, 91 U. S. 587;
*Allen* v. *Gillette*, 127 U. S. 589.

But it is said that if there is no absolute prohibition upon one co-owner buying at an open sale of the common property to satisfy a mortgage or other incumbrance thereon, that at least the fiduciary character and common interest due to such a cotenancy require of one who buys the utmost fairness of conduct. Concede this. It is then said, that Jenner at the bidding held a power of attorney from three others of the syndicate members, by which he was to bid the property in for their mutual benefit at the lowest price possible, and at a price not exceeding $24,000. That he held this power of attorney and had undertaken to buy at as low a price as possible was not known to appellant and that this "secret combination," as it is styled and designated, was a fraud upon him. It is plain from the facts of this case that the scheme for exploiting this Crescent Heights property, according to the agreement exhibited by the share certificates, had practically collapsed, and that for the want of means and harmony among the owners there was no practical way of clearing the property from incumbrances, which had turned out to be about $39,000, a sum larger than seems to have been originally supposed. There was nothing left but for the members of the syndicate to put their hands into their own pockets and put in a large additional sum or let the incumbrances be enforced. This latter is just what happened. In such circumstances it was plainly the right of each one to take care of himself, and if he saw fit to buy at the trust sale on the chance of making something, he was free to do so, provided only he took no undue or unfair advantage of his co-owners, and observed the rules concerning fairness at such a sale which prevails in any circumstances. If two or more of those who had been concerned should choose to unite their fortune in a new purchase, there was no principle of law or morals to forbid. That they should agree to buy at the best price obtainable was their right, if they might buy at all, provided they resorted to no artifice to deter others from bidding. *Pewabic Mining Co.* v. *Mason,* 145 U. S. 349.

Mr. Jenner's attitude at the sale was that of an open bidder acting in his own interest, and necessarily in opposition to that of the appellee and other cotenants. There were others present at the sale bidding against him, and chief among them was the appellant himself, who, although he says he intended to give the syndicate the benefit of his purchase, said nothing of it, and seemingly sought to secure himself as best he could in the apparent wreck of the joint enterprise. It was the misfortune of the appellant that he forced the bidding beyond the maximum price to which Jenner was authorized to go, and then was unable to comply with the terms of the sale. This resulted in an immediate reoffering of the property, as was to be expected. That in this second sale the property was knocked down for much less only shows that the former price had been inflated by the competition between these cotenants, each trying to save himself in the same way. That the price at which Jenner bought was probably several thousand dollars less than its then estimated market value, may be true. But it is also true that the property was of a speculative character, and at that time and for some time later was difficult of sale and much depressed. But this price was not so grossly inadequate as of itself to justify relief, even if the bill had been promptly filed. That sale was in February, 1898. This bill was filed in the spring of 1903. That appellant did not at the sale know that Jenner was buying for himself and certain other of the syndicate may be true, but he, confessedly, learned that fact when Jenner and his associates fell out and the fact came to light in a bill filed in December, 1898. At most, the sale was voidable, not void, and he who would complain must seasonably elect whether he will avoid it or not. *Twin Lick Oil Co.* v. *Marbury*, 91 U. S. 587.

Appellant did not act with that degree of promptness which equity demands. He has slumbered over the question of whether he should elect to let Jenner hold on to his purchase or require him to give the benefit of his bargain to his co-

tenants.. A delay of not less than four years, during which there has been a large appreciation in the value of the property, is unreasonable. Two courts in succession have failed to find ground for relief, and we see no good reason for reversing the decree from which the appellant has appealed.

It is therefore

*Affirmed.*