## MURPHY v. ARGONAUT OIL CO. et al.* (No. 11776.)

Court of Civil Appeals of Texas. Fort Worth. July 2, 1927.

Rehearing Denied Sept. 24, 1927.

1. **Corporations** ⬅548(3)—**Failure to obtain judgment against corporation in state of suit held not bar to relief under creditors' bill brought after obtaining judgment elsewhere.**

Failure of plaintiff in seeking to recover against assets of corporation to reduce claim to judgment in Texas court *held* not to prevent recovery under creditors' bill, where plaintiff had obtained judgment in state of New York and alleged in petition that corporation had no assets in that state but that all its assets were in state of Texas, in which creditors' bill was instituted.

---

**2. Corporations ⬤⇒548(1)—District court had authority, in creditors' suit, to appoint receiver and order sale of corporation's assets to satisfy established claims of creditors involved.**

In creditors' action against corporation, district court having general jurisdiction had authority to appoint receivers, and to render judgment and order sale of corporation's assets within its control, or of such part of assets as should be necessary to satisfy established claims of creditors involved in such litigation.

**3. Corporations ⬤⇒560(5)—Appointment of attorneys for creditor as receiver's attorneys held not to require setting aside sale of corporate assets under receivership.**

In suit against corporation in which receiver was appointed, appointment of attorneys for plaintiff as attorneys for receiver *held* not ground for setting aside sale of corporation's assets under receivership where it was not shown that such attorneys, acting for creditor, induced receiver to neglect interests of other litigants, or that conflict of interest arose between creditors engaged in litigation.

**4. Corporations ⬤⇒560(5)—Corporation's attorney purchasing corporate assets at receiver's sale held to hold excess over amount of claims, costs, and fees in · original proceedings for benefit of other creditors and corporation.**

In· creditor's bill against corporation, corporation's attorney purchasing corporate assets under receivership in previous litigation *held* to hold for benefit of plaintiff and other creditors and for corporation remainder of assets over and above amount required to satisfy claims, costs, and fees in original suit.

**5. Corporations ⬤⇒557(1)—Suit against corporation seeking· foreclosure of vendor's lien and appointment of receiver is equity proceeding.**

Suit against corporation seeking foreclosure of·vendor's lien on oil permits sold corporation and appointment of receiver is in nature of equity proceeding.

**6. Corporations ⬤⇒568—Corporation is entitled to corporate assets over amount required · to pay claims, costs, and fees in receivership proceedings.**

In equity, corporation is entitled to remainder of its assets, if any excess remains over amount necessary to pay claims of litigants and attorney's fees and costs under receivership.

Dunklin, J., dissenting.

Appeal from District Court, Tarrant County; R. E. L. Roy, Judge.

Suit by J. Myron Murphy against the Argonaut·Oil Company and others. Judgment for plaintiff against defendant named, and plaintiff appeals. Reversed and remanded, with instructions.

Clay Cooke, of Fort Worth, for appellant. McLean, Scott & Sayers, Canty Hanger & McMahon, Walter D. Caldwell, and Phillips,

Trammell & Chizum, all of Fort Worth, for appellees.

BUCK, J. Suit was filed by J. Myron Murphy in the Seventeenth judicial district court of Tarrant county against the Argonaut Oil Company, a Delaware corporation with a permit to do business in Texas,· Walter B. Scott, individually and as trustee for the corporation, James P. Straughan, individually and as receiver of the corporation, J. Lee Costley, Tol Johnson, and S. W. Fisher. The plaintiff's third amended original petition was filed May 8, 1926. The record does not show. when the original petition was filed. Plaintiff alleged that the permit of the Argonaut Oil Company to do business in .Texas was forfeited on or about July 3, 1922; that there were no directors or officers of the oil company residing in New York City. The. suit was in the nature of a creditor's bill, and he alleged that the assets of the corporation in Texas had been dissipated and disposed of by proceedings in the district court of Tarrant county, which were irregular and fraudulent on the part of defendants, and that thereby the plaintiff, unless said proceedings and judgment were set aside, would be deprived of his right to collect his debt. He alleged that on June 18, 1922, plaintiff had filed in the Supreme Court of New York a suit against the Argonaut Oil Company on five promissory notes for $5,000 each, and had obtained judgment therein on September 4, 1923. For cause of action, he alleged that on March 13, 1922, the defendant J. L. Costley filed a suit in the Seventeenth judicial district court of Tarrant county against the Argonaut Oil Company, asking for the appointment of a receiver for the properties of said company in Texas. This suit was based upon a joint contract alleged to have · been executed by the Argonaut Oil Company, acting by W. E. Brady, its then president, as first party, and the plaintiff J. Lee Costley and W. E. Brady as second party, whereby the Argonaut Oil Company obligated itself to pay W. E. Brady and J. Lee Costley the sum of $35,000, for certain state oil permits in the bed of the Wichita river. W. E. Brady, joint maker of said contract, was not made a party to this suit, nor to the· prayer for a receivership. The petition prayed for a judgment against the oil company for one-half of .the total consideration which said contract purported to bind the Argonaut Oil Company to pay to the said J. Lee Costley and W. E. Brady, and for a foreclosure of an alleged vendor's lien upon the oil permits alleged to have been sold by Brady and Costley to the Argonaut Oil Company.

The law firm of Phillips, Trammell & Caldwell represented plaintiff in this suit, and plaintiff alleged that on the same day an application was filed by said firm for the immediate appointment of a receiver, though

the record shows that it was filed the second day thereafter. The reasons stated for the appointment of a receiver were that a judgment in favor of Tol Johnson against the oil company had been recovered in the Sixty-Seventh district court, on which garnishment was issued, and its funds tied up thereby, and it owed approximately $100,000, and further alleged:

"Plaintiff is informed and believes that the said defendant will be unable to replevy any such funds or properties seized or impounded by writs of garnishment, attachment or other process, and the result of levy of such process (which plaintiff alleges to be imminent) would be to greatly impair the ability of said defendant to carry on its business and would greatly impair the securities held by plaintiff for the payment of the indebtedness herein sued on, and cause plaintiff to lose a great portion of his debt."

The prayer of the application was:

"* * * That a receiver be appointed for said defendant, with authority to operate, care for, keep and maintain its properties and assets, pending the trial of this suit, with such authority, duties, and powers as to the court may seem proper."

On March 15, 1923, the court entered an order appointing James P. Straughan temporary receiver, without notice to the creditors generally—

"* * * with the authority, power, and duty to take charge and control of the books, papers, assets, and funds of said defendant in this state, and to safely keep and preserve same, pending the hearing of this case."

The court, on application of the receiver, appointed the plaintiff's attorneys, Phillips, Trammell & Caldwell, to represent the receiver of the defendant. Error is assigned to this action of the court, by reason of the fact that thereby the attorneys of plaintiff were made the attorneys of the receiver, and would be required to advise the receiver in the management of the assets of the oil company and the payment of the claims against said company and receiver, including the claim of J. Lee Costley.

McLean, Scott & McLean, of which firm the defendant Walter B. Scott is a member, filed an answer in the Costley suit May 9, 1922, as attorneys for the Argonaut Oil Company. June 23, 1922, Tol Johnson filed a petition in intervention in said suit of Costley v. Argonaut Oil Company, alleging that on February 7, 1922, he recovered a judgment in the Sixty-Seventh district court against the Argonaut Oil Company for $13,562.15, and had abstracted the same in Comanche county, Tex., and prayed that due notice be given to the plaintiff and that upon hearing the court enter an order directing the receiver to make sale of the properties of the Argonaut Oil Company, over which this intervener has a valid and subsisting lien. The plaintiff here

insists that the intervention of Tol Johnson is insufficient on which to base a judgment, inasmuch as he alleges that no adverse parties were mentioned, and it does not allege that the abstract of judgment alleged to have been filed in Comanche county was properly indexed, and does not pray for notice to the Argonaut Oil Company that it was filed without any motion therefor or any leave of the court or any entry on the motion docket, or elsewhere on the records of said court, that the judge's trial docket shows no notation of Tol Johnson ever appearing in the case, nor does the motion docket nor do the minutes of the court show any record thereof.

On July 31, 1922, as alleged, without notice to any one, or any record of Tol Johnson's intervention, an order was entered that Tol Johnson's alleged claim "be and is hereby allowed against the estate of said Argonaut Oil Company, and the same is hereby decreed that said property [describing the same] be, and the same is hereby, ordered to be sold by the receiver."

The Argonaut Oil Company was served with summons in Murphy's New York suit against it on June 18, 1922, by service on its president, John P. McEwan. Pending this suit, John P. McEwan came to Texas and made a financial arrangement with McLean, Scott & McLean, whereby the attorneys advanced a sum of money with which the Tol Johnson claim was paid in the sum of $7,250 and the Costley claim in the sum of $1,000. On September 21, 1922, the receiver, Straughan, made a report to the court of the sale of the Argonaut Oil Company's properties to Walter B. Scott, said report being in part as follows:

"At such sale your receiver was presented with an assignment from Tol Johnson, plaintiff in cause No. 54647, styled Tol Johnson v. Argonaut Oil Company, and whose claim was approved for the sum of $12,614.49 in the judgment of this court ordering the sale of the properties whereby said Tol Johnson assigned his judgment and all right, title, interest, and estate which he had in and to the properties and the right to bid at your receiver's sale of the Argonaut Oil Company (which assignment has been filed in this honorable court in this cause) to Walter B. Scott, and at such sale said Walter B. Scott bid for the properties described in the order of sale aforesaid, and which your receiver at such time, offered for sale in accordance therewith the sum of $10,000, to be credited on the amount due said Walter B. Scott as assignee of said Tol Johnson."

The evidence showed, or tended to show, that the oil properties of the oil company in Comanche county produced oil while in the hands of the receiver in the amount of $12,864.12, and produced over $44,000 since the assignment to Scott by the receiver; that, since the assignment, the properties were managed by John P. McEwan, and all receipts were deposited to McEwan's credit at the bank. On September 21, 1922, an agreed order was entered reciting as follows:

"It is therefore considered, adjudged, and ordered that upon the entry of credit by said Walter B. Scott, assignee of Tol Johnson, of $10,000 on said judgment in cause No. 54647, Tol Johnson v. Argonaut Oil Company, in the Sixty-Seventh district court of Tarrant county, Tex., said receiver, James P. Straughan, be and he is hereby authorized and directed to transfer and assign unto the said Walter B. Scott, assignee of Tol Johnson, all and singular the right, title, interest, and estate of the Argonaut Oil Company, a corporation, in and to the oil and gas leases mentioned and described in the judgment of this honorable court, dated July 31, 1922, together with all his right, title, interest, and estate therein as of date August 25, 1922, and that he turn over and deliver to said Walter B. Scott possession of all the said property, and execute to the said Walter B. Scott such necessary transfer orders and assignments as may be necessary to vest in him, the said Walter B. Scott, the right, title, interest, and estate aforesaid."

On the same day an agreed judgment was entered allowing receiver Straughan $2,000 as compensation, and Phillips, Trammell & Caldwell $1,050, as attorneys for the receiver, they having been paid $100 by Costley out of the $1,000 paid to him, and on October 17, 1922, an order was entered discharging the receiver, and reciting:

"That such receiver shall return to the Argonaut Oil Company, the defendant herein, such personal property and other properties of such defendant now in his possession, to the said defendant, the Argonaut Oil Company, taking a receipt of the attorneys in this cause, of the said defendant, to wit, McLean, Scott & McLean, and assign back to said Argonaut Oil Company the said chose in action."

Plaintiff alleged that on November 3, 1922, Scott had been repaid for all advancements so made, and he assigned said properties to John P. McEwan, trustee, "for and in consideration of $13,500 to me in hand paid by J. P. McEwan, trustee, the receipt of which sum is hereby acknowledged and confessed." McEwan was at that time president of the oil company. Later, on October 29, 1923, the original suit of Costley v. Argonaut Oil Company was dismissed.

On learning that the property had been thus placed in the name of Walter B. Scott, the company's attorney, to place it beyond his reach, plaintiff filed this suit, and sought to have said property applied to the payment of his judgment, alleging, among other things: That the Costley suit was fraudulent and fictitious and showed no valid claim against the Argonaut Oil Company. That it did not state a cause of action, because it was based upon a joint contract signed by the Argonaut Oil Company and W. E. Brady, its president, party of the first part, and J. Lee Costley and W. E. Brady as party of the second part. That the attorneys representing J. Lee Costley in his suit against the company and also against the receiver were appointed to represent the receiver too. That Walter B. Scott was the attorney representing the Argonaut Oil Company, and that he became the owner of the Tol Johnson claim, and that the allowance of same without leave to intervene, without notice, citation or any actual intervention, as a first lien on all of the company's assets was void. That the cancellation of the permit by the secretary of state while said properties were in the hands of Straughan, receiver, constituted him and the officers and attorneys in possession of its properties trustees for the benefit of creditors of said Argonaut Oil Company. That after the purchase of the claim of Tol Johnson by Walter B. Scott on behalf of the Argonaut Oil Company and the purchase of the claim of Costley, said suit and litigation was in fact terminated, and subsequent orders entered therein attempting to vest the title to all of said assets in Walter B. Scott to the exclusion of the creditors of said corporation, was void as against them. That said company has repaid the said Walter B. Scott all of the sums so advanced by him and $5,000 additional, as attorney's fees, and that he was holding the property as trustee for the Argonaut Oil Company, its creditors and stockholders. The defendant Straughan, during the time the properties were in his possession, collected therefrom the sum of $12,860.24, which sum he was required to hold for the benefit of the creditors and stockholders of the Argonaut Oil Company, and that, on the dismissal of said suit or upon the acquisition of all claims therein by Scott as attorney for the oil company, the said litigation terminated and the properties and funds revested in said corporation. That the receiver wrongfully delivered said property and assets to Walter B. Scott, attorney for the oil company, at the instance of James P. McEwan, president of the oil company, for the purpose of placing same beyond the reach of its creditors, including plaintiff, but the real and beneficial ownership thereof is in the Argonaut Oil Company, its creditors and stockholders, and that Walter B. Scott is merely holding same as trustee. That McEwan, having caused such title to be taken in said Scott and having caused said spurious and fictitious sale without knowledge on the part of the court, and for the fraudulent purpose on the part of McEwan and the officers of the Argonaut Oil Company to defraud plaintiff, plaintiff is entitled to a lien on the properties and the oil produced therefrom while in the hands of Walter B. Scott.

Plaintiff further alleged: That he had no notice or knowledge of the receivership proceedings or the orders taken therein to place the assets beyond his reach, but that, while his suit was pending in the courts of New York, the said corporation and its officers, with full knowledge thereof and with intent of delaying, hindering, and defrauding him in the collection of his said debt, had pro-

cured the carrying out of the proceedings in the Texas court, hereinabove set out. That immediately after the filing of said Costley suit the president and officers of the Argonaut Oil Company importuned plaintiff not to intervene in said suit or to present his claim therein, stating that the Costley suit was nothing but a hold-up action and that they had employed McLean, Scott & McLean to have said Costley suit dismissed, and that they would pay plaintiff's claim in 6, 12, and 18 months, that the Costley suit was merely brought for purposes of intimidating the company, and that McLean, Scott & McLean had assured them that the suit would be dismissed, and that they would recover on Costley's attachment bond. That they continued to make said statements and assertions to plaintiff to lull him into a sense of security while they carried out their fraudulent purposes. That McEwan came to Texas during the very time he was making said representations to plaintiff and procured the aforesaid loan from the firm of McLean, Scott & McLean with which to purchase the Tol Johnson judgment and the Costley claim, and agreed to pay $5,000 in addition thereto to said law firm. That said claim was purchased in the name of said Scott, but really for the benefit of the oil company. The Tol Johnson judgment was allowed as a first and superior lien on all of said assets without citation, notice, leave to intervene, without trial, and without protest of said receiver or any party, and without the appointment of any master in chancery to hear all claims and determine same, and that said judgment was not a lien upon any of said assets. That McEwan procured Straughan, the receiver, to deed all of said assets to said Scott without any consideration, permitting said Straughan and his attorneys, Phillips, Trammell & Caldwell, to retain all moneys of said Argonaut Oil Company in the hands of the receiver, upon an agreement to turn over to said McLean, Scott & McLean the control, management, and disposition of said Costley suit. That by such agreements and agreed orders the said McEwan attempted to get the legal title to all said moneys and properties out of said Argonaut Oil Company and into said Scott and Straughan for the purpose of defrauding plaintiff and placing same beyond his reach, and that said McEwan had caused to be repaid to said Scott out of said assets all sums advanced by him and approximately $5,000 additional.

Plaintiff further alleged: That McEwan had caused said legal proceedings to be taken in the Texas court, evading plaintiff and hiding from process service in New York until on or about February 19, 1925, when plaintiff procured service upon him and took his testimony in supplementary proceedings, wherein he falsely testified that he knew nothing about said proceedings in Texas, and that

McLean, Scott & McLean had purchased said properties for themselves at a valid receiver's sale, and otherwise testified falsely and evaded inquiries for the purpose of deceiving plaintiff. That the Argonaut Oil Company was at all times insolvent and its permit forfeited and said properties constituted a trust fund for the payment of plaintiff's and other creditor's claims. Wherefore, he prayed judgment for the debt and for the restoration of the assets of the corporation to the Argonaut Oil Company, in order that they might be subject to execution in his behalf.

On May 10, 1926, James P. Straughan filed his second amended original answer, which consisted of a general demurrer, a number of special demurrers, a general denial, and in which he specially pleaded the two and four year statutes of limitation (Rev. St. 1925, arts. 5526, 5527). He alleged that his appointment as receiver of the Argonaut Oil Company was regular and that he acted directly under the orders of the court, and that all of his acts were approved by the court.

The Argonaut Oil Company answered by way of a general demurrer, several special exceptions, and specially denied that plaintiff had any right of recovery against the corporation, based on his suit rendered in a court of another state, and that same had never been established in a court of proper jurisdiction in the state of Texas. It further specially pleaded that the judgment obtained in New York was dormant and without any force and effect in any court of Texas; that said judgment was rendered without notice or knowledge to defendant and those in charge, as a matter of law, of its affairs and assets, and said New York court was therefore without jurisdiction to render said judgment. The answer further pleaded that all of the acts done and proceedings had in the Texas courts were regular and in good faith. Tol Johnson and J. Lee Costley filed answers.

To the defendants' answer plaintiff filed a supplemental petition, in which it was alleged that a suit by Walter B. Scott against George E. Wye and other stockholders of the Argonaut Oil Company and against John P. McEwan and the oil company was a fraudulent, fictitious, and collusive suit, filed by Walter B. Scott at the instance of said McEwan to attempt by said illegal proceedings to place the assets of the oil company beyond the reach of its creditors. This suit was filed subsequent to the sale of the assets by the receiver to Scott, and to collect from these stockholders certain amounts alleged to have been promised Scott in order that he might be reimbursed for the loan made to the corporation and receive a fee of $5,000.

The court gave a peremptory instruction in favor of defendants Costley, Straughan, individually and as receiver, and Tol John-

son, and submitted to the jury issues upon plaintiff's cause of action against Walter B. Scott, which issues the jury answered as follows:

(1) That defendant Walter B. Scott bought the properties of the Argonaut Oil Company from the receiver in good faith, as trustee for such persons as might thereafter contribute to a fund to reimburse him for the purchase price thereof.

(2) That Walter B. Scott, at the time of the receivership sale, did not take an assignment to himself of the properties of the Argonaut Oil Company for the use and benefit of said Argonaut Oil Company.

(3) That Walter B. Scott, in the purchase of said properties from the receiver, did not have any purpose of defrauding the plaintiff or any other creditor.

(4) That the plaintiff knew of the pendency of the receivership proceedings in the case of Costley against the Argonaut Oil Company in the Seventeenth district court of Tarrant county before the sale by the receiver under the Tol Johnson intervention.

(5) That defendant, Walter B. Scott, in the case of Walter B. Scott against Geo. E. Wye and others, and in taking the subsequent proceedings, had in that cause, acted in good faith for the purpose of establishing his debt, if any, and foreclosing his lien, if any.

Upon the answers of the findings of the jury, the court entered judgment that the plaintiff take nothing as against defendants J. Lee Costley, Tol Johnson, John P. Straughan, individually and as trustee, W. B. Scott, individually and as trustee, and further ordered that Walter B. Scott be quieted in his title and possession of the oil and gas leases situated in Comanche county and sold by the receiver to him. Judgment was also rendered in favor of plaintiff as against the defendant Argonaut Oil Company in the sum of $32,095.60. Defendant S. W. Fisher was dismissed from the action. From this judgment the plaintiff has appealed.

## Opinion.

[1] Appellees urge, in the nature of a plea in abatement, that the plaintiff below did not put himself in a position to assert a cause of action against defendant, wherein he sought to set aside prior proceedings in which the assets of the corporation, the Argonaut Oil Company, had been disposed of by judgment, and by the actions of certain of the defendants; that it is necessary, before one can resort to an action in the nature of a creditor's bill, that the plaintiff have a judgment in a Texas court. Appellees cite a number of decisions and authorities, such as National Tube Works Co. v. Ballou, 146 U. S. 517, 13 S. Ct. 165, 36 L. Ed. 1070; Ladd v. Judson, 174 Ill. 344, 51 N. E. 838, 66 Am. St. Rep. 267; Shreveport First Nat.

Bank v. Randall, 20 R. I. 319, 38 A. 1055, 78 Am. St. Rep. 867; Trotter v. Lisman, 199 N. Y. 497, 92 N. E. 1052; 8 R. C. L. § 26, p. 22. In the last-cited authority it is held that:

"Although there is some conflict of opinion on the question as to the right of creditors to found their equitable action on judgments or decrees of courts of other jurisdictions, the weight of authority is apparently against the sufficiency of such foreign judgments or decrees, even those rendered by the courts of other states, and, in the absence of a statute to the contrary, requires the creditor in his bill to set forth a judgment in the jurisdiction where the suit in equity is brought, or to show that it is impossible to obtain such a judgment in any court within such jurisdiction."

While such is the rule in perhaps a majority of the states that have separate courts of equity and of law, in Texas, where law and equity practice is blended, it is not essential that the owner of a foreign judgment should establish the judgment in a Texas court before he can have the benefit of a creditor's bill. See Cassaday v. Anderson, 53 Tex. 527; Taylor v. Gillean, 23 Tex. 508.

In 15 C. J. 1388, § 14B, it is said:

"It has been held that under a statute abolishing the distinction between law and equity and giving the same court power to administer both kinds of relief, the rule requiring a creditor to exhaust his remedies at law before resorting to a creditors' bill no longer exists. But in other states the rule has been enforced in spite of the blending of the jurisdictions at law and in equity."

In a note under this statement are cited Kruger v. Walker, 111 Ga. 383, 36 S. E. 794, De Lacy v. Hurst, 83 Ga. 223, 9 S. E. 1052, and other cases by the North Carolina Supreme Court, and the cases from the Texas courts cited above.

Moreover, plaintiff in his suit sought to have the judgment fixed, and obtained a judgment against the Argonaut Oil Company, and alleged that the Argonaut Oil Company had no assets in the state of New York where the judgment had been obtained, and that all of the assets it had, so far as he had been able to determine, were in Texas, and had been disposed of by the proceedings which he sought to set aside. Therefore, we conclude that the judgment of the court below cannot be sustained on this ground.

[2] Appellant's first proposition under assignments of error 2, 3, 54 to 60, is that, where a corporation is sued and certain of its assets upon which a lien is claimed in such suit is placed in the hands of a receiver to care for and safely hold pending the trial of the suit, the court is without authority, by ex parte orders, to divest the corporation of its title to said properties and order the

receiver to sell the same, but upon the dismissal of such suit, title so placed, pendente lite, in the receiver, ipso facto reverts to the corporation. He cites the case of Kelly v. Kelly, 257 S. W. 992, by the Dallas Court of Civil Appeals, in which the court held that the statute (Rev. St. 1925, art. 2293) providing for the appointment of a receiver in certain actions involving real estate in danger of being lost, removed, or materially injured, the court is not authorized to empower a receiver to dispose of the property for the purpose of satisfying claims of general creditors; such power being provided for in other statutes applicable to other cases. In the instant case, J. L. Costley, plaintiff in the former suit, stated that he was informed and believed that the defendant would be unable to replevy the funds and property seized and impounded by writs of garnishment suit of Tol Johnson in the Sixty-Seventh district court, and that the result of such process would be to greatly impair the ability of said defendant to carry on its business and greatly impair the further payment of indebtness sued on. The prayer for the application was:

" * * * That a receiver be appointed for said defendant, with authority to operate, care for, keep, and maintain its properties and assets, pending the trial of this suit, with such authority, duties, and powers as to the court may seem proper."

Later the court appointed James P. Straughan temporary receiver, "with the authority, power, and duty to take charge and control of the books, papers, assets, and funds of said defendant in this state, and to safely keep and preserve same, pending the hearing of this cause." Later the court did authorize the sale of the property and assets to Walter B. Scott, or at least approved the sale made by the receiver. We think such approval by the district court of the sale made, in the absence of any proof to the contrary, tended to show, and did show, 'that the sale had been made under the authority of the court. We are further of the opinion that the district court, being a court of general jurisdiction, with power to appoint receivers, and to render judgment in litigation properly before it and sell the assets of the defendant corporation within its control to satisfy debts of the plaintiff or the intervener, had the authority to order so much of the property to be sold as was necessary to satisfy the established claims of the parties plaintiff and intervener. At the time of the institution of the suit and the appointment of the receiver, and even at the time of the sale of the assets, plaintiff here had not recovered his judgment in the New York court against the corporation; the order of sale being made on July 31, 1922, and the order approving the sale being made

on September 21, 1922, and the date of the New York judgment was on or about September 4, 1923. Testimony of defendant Walter B. Scott was that, at the time he purchased the Tol Johnson judgment and the J. Lee Costley cause of action, he did not know of plaintiff's suit in New York and never heard of it until a considerable time thereafter. It was not shown that he or Tol Johnson or J. Lee Costley, or any of the other defendants, knew of plaintiff's cause of action in the New York case until after the sale of the assets. As before stated, he had not secured his judgment at the time of the approval of the sale made by the receiver. We do not see that the district court was not empowered and authorized to order the sale of the properties, in order to satisfy the judgment of Tol Johnson obtained in another district court, and the claim of J. Lee Costley asserted in his suit.

[3] Complaint is made of the action of the Seventeenth district court of Tarrant county in appointing as attorneys for the receiver the attorneys who brought the suit of J. Lee Costley, to wit, Phillips, Trammell & Caldwell. Tardy's Smith on Receivers, vol. 2, p. 1761, says:

"The question as to the propriety of a choice of a legal adviser for the receiver arises mainly in connection with the question as to whether or not the attorney for a party to the action may be selected to serve in that capacity. The general rule is that such selection should not be made, The reason for the rule is the possibility that there may arise situations in the course of the administration in which there would be a conflict of interest between the party whose attorney is selected and other parties to the action, a situation in which the receiver is supposed to be impartial. The character of the duties to be mainly performed by the attorney may remove the necessity for following the rule, as where the duties will be confined to advising the receiver with reference to the routine details of his administration."

[4] At most, the appointment of plaintiff's attorneys, in the suit of J. Lee Costley, as attorneys for the receiver, was but an irregularity, and would not be ground for setting aside the sale, or other proceedings in that suit, unless it should be shown that such attorneys, by their advice, induced the receiver to do something prejudicial to some one or more of the litigants, and that occasions arose in which there was a conflict of interest between the parties to the suit. There appears in this case no such occasion. At the time of the sale of the assets to Walter B. Scott, no one before the court was interested in the assets of the corporation, except the corporation itself, and the purchaser, as an individual. While Walter B. Scott, as an individual, purchased the assets, yet he did so, as he testified, in order to secure and collect the sum of money advanced by him to the corporation to pay off the claims against

(299 S.W.)

the corporation, including the judgment of Tol Johnson, and to collect his fee agreed to be paid him by the president of the corporation. While appellant urges that, inasmuch as he was the attorney for the corporation, that at most he held the legal title in trust for the corporation, and that by the repayment to him of the sums of money owing him by the corporation he should have been required to convey the title to the property to the corporation, so that such property might become subject to other debts of the corporation, the evidence tended to show, and we believe does show, that during the receivership there was collected out of the oil produced on the leases owned originally by the corporation and sold to Walter B. Scott the sum of $12,860.24; that since the assets have been in the hands of Walter B. Scott there has been collected $44,768.13. The evidence shows that subsequent to the purchase of the assets of the corporation by Walter B. Scott, said Walter B. Scott, in order to collect from the contributing stockholders certain sums of money which had been promised him by these stockholders to repay him for the amount of money he had advanced for the purchase of the Tol Johnson judgment and the Costley claim, including his fee of $5,000, amounting to the sum of $13,500, sued a large number of these stockholders, and that John P. McEwan, individually and as president of the Argonaut Oil Company, and as agent and trustee for all the defendants, waived the issuance and service upon him and the other defendants of citation, and, as such agent for all the defendants, including the Argonaut Oil Company, entered an appearance for them in the suit; that judgment was obtained by plaintiff Scott against all of the defendants, including the Argonaut Oil Company, and the court foreclosed the lien of plaintiff as it existed the 3d day of November, 1922, on the oil and gas leases formerly owned by the corporation and purchased by Scott, and ordered such assets to be sold, and from the proceeds of such sale that Scott be paid the balance of the sums claimed, including his $5,000 fee, and said sale was had and the property was sold to Walter B. Scott and the title was divested out of the Argonaut Oil Company and vested in him. Thus Scott became the owner of the assets by reason of a second sale to him. He testified on the stand that, though he had legal title to the assets, and did not intend that they should be subjected to the debts of "those wolves in New York," including the plaintiff here, yet that, if he chose to return to those of the stockholders who had contributed to the payment of sums of money due him, it was nobody's business.

[5, 6] The suit to appoint a receiver in the original case was in the nature of an equity proceeding. Plaintiff in this suit also asked for the appointment of a receiver, and there-fore, by virtue of his creditor's bill, prayed for equitable relief. It appears that there has been collected sufficient funds for the repayment to Walter B. Scott of all money he has been out, including his fee, and also for the repayment to the contributing stockholders of such sums of money as they have furnished. In equity, a corporation itself is entitled to the remainder of its assets, and plaintiff below, by his petition and his testimony, shows that he is entitled to subject any of the assets properly belonging to the corporation to the payment of his debt. We think that the trial court should have set aside so much of his judgment and orders as divested the title to the assets out of the corporation and vested it in Walter B. Scott, and that a receiver should have been appointed, if necessary, in the instant proceedings, and after payment to Walter B. Scott of the sums of money due him and the repayment to the contributing stockholders of the sums of money paid by them to Walter B. Scott, the payment of all costs incurred in the prior proceedings, before the filing of this suit, that the remainder of the assets should be held subject to the payment of any debts owing by the corporation.

Therefore the judgment below is reversed and the cause is remanded, with instructions to the trial court, after the payment to Walter B. Scott of all moneys advanced by him, to pay the judgment of Tol Johnson and the claim of plaintiff in the suit of J. Lee Costley, less such sums as may have been paid by contributing stockholders to Walter B. Scott, and the repayment to these contributing stockholders of such sums as they have paid to Walter B. Scott to reimburse him for the sums paid by him, and the payment of all costs of the various proceedings had in the Seventeenth district court, growing out of the suit of J. Lee Costley, then to hold the remainder of the assets of the corporation subject to the payment of any just debts against it. The trial court is instructed to require Walter B. Scott to file in the court below a just accounting of the receipts received by him from the Comanche county leases, since he purchased them by order of court September 21, 1922, and all reasonable expenses incurred in the management thereof, including all costs of court paid by him, and his fee of $5,000; that the trial court divest out of Walter B. Scott, and out of any other persons claiming an interest thereto, all title and interest in the assets of the Argonaut Oil Company, and vest title thereto in it, and proceed to administer such assets towards the payment of all just claims and judgments against the corporation. If any assets remain after such debts have been fully satisfied, then to turn over to the corporation such remainder, vesting title there-in to it. It is the purpose of these instructions to allow defendant Walter B. Scott to recover the expenses incurred and the ad-

vances made by him, and his attorney's fee of $5,000, less the sums of money received by him from the contributing stockholders of the corporation, and to repay to such contributing stockholders all sums of money advanced by them to Walter B. Scott.

While we have had some difficulty in determining the merits of this case and in determining what judgment should be rendered by us, yet we believe that the judgment here rendered as nearly as possible gives justice to all of the parties involved, including other creditors, if any. It is not the intention or purpose of this court to disturb the action of the trial court in permitting and approving the settlement made of Tol Johnson's judgment and the J. Lee Costley claim, or the allowance of compensation to the receiver James P. Straughan and to his attorneys. The portions of the judgment heretofore entered by the trial court, and sought to be set aside by the instant suit, will not be disturbed.

Judgment reversed, and cause remanded, with instructions.

DUNKLIN, J. (dissenting). The writer concurs with the majority of the court in the conclusion reached, after consideration of the many assignments of error discussed, that Walter B. Scott is now vested with the legal title to the property in controversy, but he dissents from the further conclusion reached that Scott holds the property in trust for the purposes stated in the opinion of the majority.

The writer is of the opinion that the findings of the jury and the uncontroverted proof conclusively refute the contention of appellant that such a trust relation as found by the court has arisen. Undoubtedly, the trial court had jurisdiction to appoint the receiver and to order the sale of the property. Costley, the plaintiff, and Tol Johnson, the intervener, had the legal right to institute and prosecute the receivership proceedings, and there was a clear showing of good ground for the appointment of a receiver. The exercise of that legal right cannot be held a proper basis for appellant's attack upon those orders of the court upon allegations that the same were brought about through an unlawful conspiracy to defraud appellant and other creditors. Pye v. Cardwell, 110 Tex. 572, 222 S. W. 153; Salado College v. Davis, 47 Tex. 131; Knowles v. Cary & Burns Co. (Tex. Civ. App.) 141 S. W. 189, and other decisions there cited; 12 R. C. L. 237; 26 R. C. L. 757–760.

The contributing stockholders were not personally liable to the creditors of the corporation, nor did they occupy any fiduciary relation to such creditors in the purchase of the property. And, in the absence of any proof that in procuring Scott to purchase the property for their benefit, either they or Scott took any unfair advantage of appel-

lant or any other creditor of the corporation, the purchase by Scott at the receiver's sale vested title in him for the benefit of such contributing stockholders, to the exclusion of appellant and other creditors and of the corporation itself. Pacific Ry. Co. v. Ketchum, 101 U. S. 289, 25 L. Ed. 932; 7 Fletcher's Cyclopedia on Corporations, § 4937, p. 8548; Starkweather v. Jenner, 216 U. S. 524, 30 S. Ct. 382, 54 L. Ed. 602, 17 Ann. Cas. 1167; Boyes v. Turk Mining Co., 56 Wash. 515, 106 P. 474; Rawlings v. New Memphis Gaslight Co., 105 Tenn. 268, 60 S. W. 206, 80 Am. St. Rep. 880.

While the purchase by Scott at the receiver's sale made him a trustee for the contributing stockholders, his second purchase in the foreclosure suit against those stockholders, for the money he had advanced at their instance to purchase from the receiver, vested in him the absolute legal title to the property. None but the contributing stockholders could in any event claim an equitable title against Scott under the second sale, and they have asserted no such claim. Under the facts disclosed in the record, Scott is not legally nor equitably bound to convey title to the contributing stockholders; but, even if by reason of his relations to them he should see fit so to do, such title would be held by such stockholders to the exclusion of the creditors and the corporation.

Furthermore, appellant is in no position to claim that Scott now holds the property in trust for the benefit of appellant as a creditor of the corporation, since, as found by the jury, he was informed of the pendency of the receivership suit, and since thereafter he took no steps to vacate the receivership or to oppose the sale by the receiver, or to purchase at such sale, and has not offered to pay any part of the purchase price. Even though it be said that appellant knew nothing of the receivership proceedings until after the sale, still there was no proof that, if he had acquired such knowledge in time to do so, he could and would have shown good grounds for defeating the appointment of a receiver, and the sale by him, or else would have purchased the property at the sale, or procured a better price from some other source. Moreover, as disclosed by the record, the proof tended strongly to show that the money realized from the operation of the property before the receiver's sale and since the purchase of it by Scott, has not exceeded operation expenses; and, in the absence of a contrary finding by the jury, a finding by the court in accordance with that evidence will be presumed in support of the judgment.

The proof further shows that the price of $10,000, paid by Scott at the receiver's sale, was its full market value, and since that sum was paid to the receiver for the benefit of the corporation and its creditors, including appellant, he (the appellant) has no right to complain. Tobin Canning Co. v. Fraser,

81 Tex. 407, 17 S. W. 25, 9 A. L. R. 1447, and other authorities there cited in note.

The writer is of the opinion that the judgment of the trial court should be affirmed in its entirety.