## PURE OIL CO. v. HYMAN et al.
### No. 6337.

Circuit Court of Appeals, Seventh Circuit.
Jan. 29, 1938.

Edward H. Lang and Rufus D. Beach, both of Chicago, Ill., for appellant.

Mitchell D. Follansbee, Clyde E. Shorey, Robert W. Schupp, Lee J. Gary, and Gerhardt S. Jersild, all of Chicago, Ill., for appellees.

Before SPARKS and TREANOR, Circuit Judges, and LINDLEY, District Judge.

SPARKS, Circuit Judge.

Appellant instituted this action to compel appellees to convey to it title to United States patents Nos. 1,919,722 and 1,919,723, and to enjoin appellees from infringing appellant's rights thereunder. In the alternative, appellant sought to compel appellees to grant it a license under the patents. After a hearing, the court dismissed the bill of complaint for lack of equity. The errors relied upon arise from an adverse ruling on the question whether appellee Hyman made .or conceived the inventions herein involved during his employment by appellant, and also from an adverse ruling on the matter of laches.

The District Court found the facts specially and rendered its conclusions of law. In substance they are as follows:. Hyman, an expert chemist, was employed by appellant on or about June 1, 1928, and signed the following agreement:

"The undersigned employee of The Pure Oil Company, for and in consideration

of such employment, hereby agrees with The * * * Company that * * * (it) shall have, and the undersigned does hereby grant unto (it) * * * exclusive rights to any and all inventions relating to prospecting for and discovery, production, transportation, manufacturing and refining petroleum oils and gases and their products, and methods and means of treating or refining the same, which may be conceived or developed by * * *. (him) during (his) employment * * * by The * * * Company, and * * * (he) hereby further agrees, that in the event any such invention shall be or become the subject of patent application which shall be filed and prosecuted under the direction and at the expense of The * * * Company, to assign all rights to and in such invention and the application for patent therefor to The Pure Oil Company, or to any other assignee specifically designated by it."

While in this employment, Hyman worked at the control laboratory of appellant in Chicago until about the middle of September, 1930, when he was sent to appellant's refinery in West Virginia, where he remained until October 30, 1930. While in appellant's employ Hyman did work assigned to him from time to time by appellant, kept detailed records of his work, and made complete reports thereon to appellant. Everything learned or discovered by him while in this employment was disclosed by him to appellant, in laboratory notebooks kept, and written reports made by him, promptly at the time the work was done. He did not withhold or conceal from appellant any inventions or discoveries which he made while in its employ.

Before he went to West Virginia, Hyman had never done any work on hydrocarbon polymers, and knew nothing about them except the fact that there was such a thing. He was therefore instructed by appellant to work on finding hydrocarbon polymers which would be satisfactory for use as a core oil and which might be substituted for linseed oil in such use. A core oil is an oil used by foundries in making cores used in castings, the oil being mixed with sand to form a binder for the sand. Hyman was discharged by appellant on October 31, 1930 (because he declined to return to West Virginia, and preferred to work in appellant's control laboratory at Chicago). At the time of the termination of his employment by appellant, Hyman had

no knowledge of any use for hydrocarbon polymers other than as a core oil.

While in appellant's employ Hyman was never assigned to, nor did he do any work with respect to, mixing hydrocarbon polymers with paint or varnish adjuvants, or producing light-colored or transparent hydrocarbon polymers, and during such employment he was never told, and did not know that polymers might be mixed with paint or varnish adjuvants to produce a coating of impregnant, or that light or pale-colored or transparent polymers might be produced. The idea of mixing polymers with paint or varnish adjuvants, and that of producing light-colored or transparent polymers, were both conceived by Hyman for the first time subsequent to the termination of his employment by appellant.

On November 7, 1930, Hyman filed application for United States letters patent, Serial No. 494,204. He abandoned it in favor of his application subsequently filed on April 27, 1933, which was a continuation in part of his previous application. The latter application eventuated in patent No. 1,-919,723, issued to appellee, Velsicol Corporation, as assignee of Hyman, on July 25, 1933. This patent, in general, covers coatings and impregnants containing paint and varnish adjuvants and hydrocarbon polymers of mineral origin, resulting from the polymerization of unrefined vapor phase cracked gasoline, and having certain minimum requirements of iodine number and drying time. Hydrocarbon polymers, as such, are not claimed in the patent.

On November 13, 1930, Hyman filed an application for United States patent, which eventuated in patent No. 1,919,722, issued July 25, 1933, to Velsicol Corporation as his assignee. The patent covers a process of producing a polymerized unsaturated transparent compound, possessing certain drying characteristics. The patent likewise covers the product. Both patents were conceived and developed after, and not before, the termination of Hyman's employment by appellant.

The Velsicol Corporation was organized in January, 1931, for the purpose of promoting and developing the inventions covered by the patents here involved, and the sale of products manufactured thereunder. It has continuously engaged in that business, and has expended large sums of money in its development, in the purchase of equipment, plant erection, and the installa-

tion of machinery and equipment for the manufacture of the products. At all times since the organization of the corporation, Hyman has been vice-president, a director, and a stockholder, devoting his entire working time thereto. Of all these activities of appellees, the appellant has had knowledge since about the time of their inception. Substantial portions of such expenditures were made after appellant had full knowledge of the issuance of the patents, and after the institution of the interference proceedings hereinafter mentioned, and prior to the commencement of this action on May 9, 1935.

Shortly after the termination of his employment by appellant, Hyman advised it that he was doing experimental work on hydrocarbon polymers and their utilization, and obtained from appellant a small quantity of polymers for such purpose. Shortly thereafter appellees commenced the purchase of polymers from appellant and from time to time thereafter purchased them from appellant with greatly increasing frequency and in greatly increasing amounts, during which times appellant had knowledge that such polymers were being used by appellees in mixtures in the production of paints, varnishes, coatings and impregnants.

As early as August, 1933, appellees furnished appellant copies of the patents herein involved, whereupon appellant stated that it was not interested therein, and expressed the opinion that the patents were of no value. Later in 1933, appellant and appellees entered into negotiations with a view to licensing appellant to use the inventions, and the purchase by Velsicol Corporation from appellant of hydrocarbon polymers. These negotiations continued without an agreement until July or August, 1934, at which time they were abandoned.

On May 18, 1934, appellant caused one of its employees, Mr. Chittick, to file an application in the United States Patent Office for the reissue of a patent theretofore granted to him. In this application he copied claims 1, 2, 3, 4, 5 and 9 of the Hyman patent No. 1,919,723; alleged that he and not Hyman, was the first inventor of the inventions claimed; asked a reissue of his previous patent including the claims above referred to, and that an interference be declared between his application and the Hyman patent. Thereupon an interference was declared by the Patent Office on August 27, 1934, and after a full hearing the Examiner awarded priority of invention to Hyman. From that decision appellant appealed, and that appeal is now pending. Although the interference proceedings were carried on in the name of Chittick, they were conducted at the direction, in the interest, and at the expense of appellant, and were defended in the interest and at the expense of the Velsicol Corporation, which expended large sums of money for attorneys' fees, printing and other costs in defense of the Hyman patent, substantial portions of which expenditures were made prior to the institution of this suit.

On May 9, 1935, appellant, in writing, notified appellees for the first time, that appellant had reason to believe that the inventions embraced in the Hyman patents had been made by Hyman during his employment by appellant, and that under their agreement it was entitled to the legal title to the patents. Hence it demanded a transfer of the same from the Velsicol Corporation. On May 24, 1935, appellees, in writing, denied the statements contained in the notice and refused to make the transfer. Appellee, Velsicol Corporation, began construction of its plant in October, 1935. After the demand of May 9, 1935, no action was taken by appellant, other than the prosecution of the interference proceedings, until this suit was filed in February, 1936.

The court further found that appellant's actions, after it learned of the issuance of the patents, were inconsistent with any belief on its part that in equity and good conscience it owned them, and that it was not in good faith in claiming such ownership, as no such claim had previously been made, and when it was made appellant knew, by reason of the large increase in the polymer purchases by the Velsicol Corporation from appellant, that appellees were being successful in their efforts to promote and make the patents of value.

Upon these facts the court concluded that: (1) Appellant had failed to sustain the burden cast upon it of proving that the inventions covered by the patents were conceived or developed by Hyman while in the employ of appellant; (2) the evidence showed that the inventions were conceived and developed by Hyman subsequent to such employment; (3) appellant had no rights in either of the patents or the inventions covered thereby; (4) under the facts recited, appellant's delay in instituting this action constituted such laches as in equity would bar any rights which appel-

lant might have in the patents and inventions; (5) the case should be dismissed for lack of equity.

All the facts found are unquestionably supported by evidence, and in the main they are supported by Hyman's testimony alone. However, appellant contends that Hyman's testimony is not substantial in that it is inconsistent. In this respect it is urged by appellant that his testimony which supports the findings is inconsistent with the contents of a letter written by C. R. Wagner, appellant's chief chemist at Chicago, to J. R. Palmer, in charge of appellant's refinery at Cabin Creek, West Virginia. This letter was dictated in the presence and hearing of Hyman, and delivered by him to Palmer. The only pertinent part of that letter is as follows:

"Dear Mr. Palmer:

"This letter will be presented to you by Dr. Julius Hyman who has been associated with the Pure Oil Company since June, 1928, in the Control Laboratory. Dr. Hyman is being sent to Cabin Creek to do some work on the manufacture of a linseed oil substitute from polymers."

We find nothing in this letter which is in any way inconsistent with Hyman's testimony or with the findings. This conclusion in a great measure is supported by Wagner's testimony as to the events transpiring at the time the letter was dictated. He said:

" * * * I also gave Hyman verbal instructions before I sent him to Cabin Creek * * * These oral instructions were given about September 11th, 1930. No one else was present except the stenographer who took the letter. * * * I explained to Hyman the difficulty we had been having in making a satisfactorily uniform product and that I wanted him to find what the difficulty was, why we were unable to produce a uniform product, what we had to do in order to get one, and to prepare a drum of a satisfactory product for Swan-Finch. I told Hyman that these polymers were to be used as a core oil and as a substitute for linseed oil. I mentioned also the interest that Swan-Finch had expressed in them as a paint vehicle. * * *"

With the exception of the last sentence quoted, with which Hyman's testimony is at variance, there is no inconsistency between Hyman's testimony and that of Wagner quoted above. Under these circumstances, we are convinced that the findings with respect to the time of conception of the inventions involved are supported by substantial evidence, and we can not disturb them. The evidence is not only substantial but we think it preponderates in favor of appellees.

We are in accord with the principle relied upon by appellant that if an employee in the course of his employment makes an invention, using his employer's time and materials, the employer has a free indefeasible license and shop right under the invention and any patent covering the invention, which shop right is co-extensive with the business requirements of the employer. In applying this principle, however, appellant seems to assume, and so stated in its argument, that the inventions and patents before us separately cover the production of polymers. If this were true, there would be sound logic in its conclusions, and no one could reasonably contend that appellant should be restrained by Hyman's disclosures from producing polymers as it had theretofore done for a long period of time. However, appellant's premise in this respect is not sound. The patents do not purport to cover polymers as such, but they are merely included as one element in a combination. The District Court stated this as a fact, appellees' counsel admitted it in argument, and we reiterate it. Hence, appellant's fears are groundless that it may be held to respond in damages as a contributory infringer of these patents by continuing to produce and sell polymers as it has in the past. See Leitch Mfg. Co. v. Barber Co., 58 S.Ct. 288, 82 L.Ed. ——, decided by the Supreme Court, January 3, 1938.

With respect to the question of laches we think the court's findings are supported by a preponderance of substantial evidence, and that the District Court's conclusions are sound. We agree with appellant that, as a general rule, lapse of time alone will not constitute laches, but the findings with respect to laches disclose that they were based on more than mere lapse of time. In August, 1933, appellant asserted that the patents were of no value, and that it was not interested in them. For some months prior to August, 1934, it led appellees to believe that Hyman was the real inventor by trying to secure a license under the patents. It caused an interference to be declared between Chittick and Hyman which was decided by the Examiner adversely to appellant. Then for the

first time, on May 9, 1935, appellant notified appellees that under the contract the inventions belonged to it and demanded a transfer. This was refused and nine months elapsed before this action was instituted. In the meantime appellant did nothing but prosecute the interference proceeding, and in October, 1935, appellees began the construction of their plant for the production of hydrocarbon polymers. Under these circumstances we think the court was right in concluding that appellant was guilty of laches which barred its rights, if any, to recover. Twin-Lick Oil Co. v. Marbury, 91 U.S. 587, 23 L.Ed. 328; Starkweather v. Jenner, 216 U.S. 524, 30 S.Ct. 382, 54 L. Ed. 602, 17 Ann.Cas. 1167; Curtis v. Lakin, 8 Cir., 94 F. 251. Furthermore, we think appellant was estopped from asserting its claims herein involved by its prosecution of the interference proceedings. Texas Co. v. Gulf Refining Co., 5 Cir., 26 F.2d 394.

Nothing in the decree shall be construed to deny to the plaintiff the right freely to produce and sell, as it has in the past, polymers having the characteristics of the polymers disclosed in Hyman patent, No. 1,919,-723, which polymers constitute one element of the composition claimed in said patent.

Decree affirmed.